WILLIAM B. NEWBERY et al., Appellants, *v.* CHARLES WALL et al., Respondents.

A letter admitting the purchase of goods by the writer from the person to whom it is written, but without expressing any consideration or stating terms of the purchase, is not a sufficient note or memorandum in writing to take the case out of the operation of the statute of frauds. (2 R. S., 136, § 3.)

(Argued May 6, 1875; decided June term, 1875.)

APPEAL from a judgment of the General Term of the Superior Court of the city of New York, affirming a judgment in favor of defendants, entered upon an order dismissing their complaint on trial. (Reported below, 3 J. & S., 106.)

This action was brought by the plaintiffs to recover of the defendants the price of 1,000 bales of Dowrah jute, alleged to have been sold them at a stipulated sum. The facts material to the decision of the appeal sufficiently appear in the opinion.

*Henry Whittaker* for the appellants. Defendants' letter admitting the purchase of the goods by them was sufficient to take the case out of the operation of the statute of frauds. (2 R. S., 136, § 3; *Hunt* v. *Singer*, 1 Daly, 209; *Central Bk.* v. *Pinder*, 46 Barb., 467; *Fisher* v. *Fredenhall*, 21 id., 82; *Lowber* v. *Selden*, 11 How., 526.)

*Richard H. Huntley* for the respondents.

LOTT, Ch. C. There is no ground for the reversal of the judgment in this case. The complaint alleges that, on or about the 25th day of May, 1870, "the plaintiffs agreed to

sell to the defendants and the defendants agreed to purchase from the plaintiffs 1,000 bales of Dowrah jute, shipped at London for New York, per ship American Congress, in good order and free from damage, at the price of five cents and three-quarters of a cent per pound, in gold coin of the United States, cash payable in fifteen days from delivery alongside ship." It is then averred, that the said quantity of jute was delivered by the plaintiffs to the defendants alongside ship according to the agreement, more than fifteen days previous to the commencement of the action, but that the defendants had not paid the stipulated price, or any part thereof.

The answer of the defendants admits their copartnership in business, and denies each and every allegation in the complaint, except said copartnership. It then sets up as a further defence, that the defendants at the time stated in the complaint, " did agree to buy of the plaintiffs 1,000 bales of good Dowrah jute, thereafter to arrive from London by the ship American Congress, said jute to be merchantable and in good order and free from damage, at five and three-quarter cents per pound, payable in gold or its equivalent." It then avers, that the plaintiffs have not delivered or offered to deliver the jute so agreed to be purchased by the defendants or any part thereof, and that the defendants have always been ready and willing to perform all the conditions of said contract on their part, and have been always ready to receive said jute and to pay for the same as provided in said agreement, but that the plaintiffs have wholly failed to perform the conditions of said contract on their part.

I have referred to the pleadings with this particularity, for the purpose of showing that the plaintiffs' counsel is mistaken, in saying, as he does in his first point, that defendants' answer "admits the existence of a contract for sale and purchase of the jute in question, substantially agreeing with that set up in the complaint," and that "it was therefore error to grant the motion for a nonsuit, on the ground of the

non-existence of any valid contract between the parties in the face of this admission." On the contrary, the answer denies, in the fullest terms, that the contract set forth in the complaint was ever entered into, and alleges that an agreement, materially different in its tenor and effect (the terms of which are stated), was made between them, which the plaintiffs had failed to perform. Hence, it was incumbent on them to prove, on the trial, the making of the contract on which they in their complaint based their cause of action, and for that purpose they introduced a broker's memorandum or note of sale, that had been delivered to them by Mr. Sturgess, a broker, in the following terms, viz. :

"DANIEL L. STURGESS, HEMP BROKER,  
111 WALL STREET, NEW YORK, *May* 25, 1870.

"Sold for Messrs. Newbury & Son, to Messrs. Wm. Wall's Sons, 1,000 bales Dowrah jute, shipped at London for New York per ship American Congress, in good order and free from damage, at 5¾c. per lb., gold, cash, payable in fifteen days from delivery alongside ship. Purchasers to advance gold for duties. Bkg., 1-20 per cent.

"DANIEL L. STURGESS,

{ U. S. Int. Rev. stamp,  
5 cents, canceled. }                "*Broker.*"

This, it will be seen, is a note of sale for and on behalf of the plaintiffs by Sturgess, the broker. He was examined as a witness for them, and he testified that the said contract was in his handwriting; that it was made by him, and that he made a copy of it and delivered it to his young man for delivery to William Wall's Sons; that Newbery & Son first spoke to him about the jute; that Mr. Newbery told him that he had received advices from his friends in London of having shipped 1,000 bales of good Dowrah jute (each bale weighing about 300 pounds), and he wished to have him (Sturgess) go out and see what he could do with it, and the best price he could get, and let him (Newbery) know, and he did so; that he saw Mr. Charles Wall and offered it to him ; Wall said "if

it was a good quality, good Dowrah jute, good quality, that he would take it at five and three-quarters cents, gold;" that he (Sturgess) then "went back and told Mr. Newbery, and Mr. Newbery accepted the offer." He also testified that he told Newbery what he had said to Mr. Wall with regard to the quality, that it was good Dowrah jute, and that he, after the acceptance of the offer by Newbery, informed Wall of that fact, and stated to him that he had made a contract, the terms of which were that it was "good Dourah jute, and that Mr. Newbury had accepted his (Wall's) offer for five and three-quarter cents." There is nothing in the testimony showing or tending to prove that a copy of the contract, which was given by Sturgess to his young man for delivery to the defendants, was ever delivered to them, and the proof fails to establish the fact that any contract in writing of the tenor alleged in the complaint, or any note or memorandum of such a contract, was ever subscribed by the defendants or their lawful agent. In making this statement, I have not overlooked the second point of the plaintiffs' counsel, in which he claims that the existence of the contract is admitted in a letter of the defendants to them, dated August 16, 1870, rejecting the jute, which is in the following terms, viz. :

" GENTLEMEN.— On examination of the 1,000 bales of jute we bought of you we find the article to be in most respects different from any usually imported under that name. The quality is so inferior that it is not fit for manufacturing purposes, totally unsalable and unmerchantable, and hence we regret to inform you that we reject it and give up the purchase.

" Very respectfully,

" WM. WALL'S SONS."

The counsel says that " this letter, although purporting to be a disaffirmance, admits *per se* the existence of the contract sought to be disaffirmed. When coupled with the parol testimony given by Sturgess as to the making of the purchase by the defendants, through his instrumentality, this letter has, it is

respectfully submitted, the effect of a signed memorandum in writing, admitting the existence of a contract for purchase by the defendants, as alleged;" and adds: "On this further ground the granting of a nonsuit was improper."

It is sufficient to say, in reference to the effect of the letter as a memorandum of contract, that it does not express any consideration or terms of the purchase, nor refer to any agreement containing them, and it is impossible to say, from the contents of the letter, what the contract in fact was, and, hence, is wholly ineffectual for the purpose of a note or memorandum in writing of any contract whatever. Nor does the letter show, in any aspect of its character, that the nonsuit was erroneously granted. Assuming it to prove a good and binding contract, it, at the same time, proves its non-performance by the plaintiffs and, consequently, that the plaintiffs were not entitled to a recovery.

I shall, therefore, assume that no contract or note or memorandum of any contract in writing has been proven, and will now consider the case on the assumption that a verbal agreement for the sale by the plaintiffs to the defendants and a purchase by the defendants from the plaintiffs of 1,000 bales of good Dowrah jute, and in other respects of the tenor and terms stated in the broker's sale note, hereinbefore set forth, was established. The only witness who testified as to the nature and terms of the contract was Sturgess. His testimony clearly showed that the jute was to be "*good Dowrah jute,*" and to that extent the terms of the sale note were modified. Considering and treating the contract as requiring the jute deliverable under it to be of that kind and quality, there was a failure on the part of the plaintiffs to fulfill the requirement thereof in those respects. Sturgess swears that the article, for the price of which this action was brought, was not "Dowrah jute," and that, as jute of any kind it was not good, but was of very inferior and of the lowest quality. It appears by the letter of the defendants of 16th August, 1870, above set forth, that they rejected the jute and gave up the purchase on the ground of the non-fulfillment of the contract by the plaintiffs,

and there is no testimony to warrant the conclusion or infer-ence that any portion of the goods were ever accepted by the defendants. The most they did was to make an arrangement with warehousemen or public storekeepers for the storage of them, when landed, in their bonded warehouse; but that was afterwards annulled and they were not, in fact, stored therein for the defendants or on their account.

In view of all the facts disclosed on the trial I have reached the conclusion that there was no error in dismissing plaintiffs' complaint, and it follows that the judgment of the General Term affirming such dismissal was proper and must be affirmed, with costs.

All concur.

Judgment affirmed.