## WILLIAM B. NEWBERRY et al., Appellants, *v.* MICHAEL W. WALL, Survivor, etc., Respondent.

A broker's note or memorandum of sale of goods, containing the names of the vendor and vendee and the terms of sale, and delivered to both parties makes a valid contract of sale within the statute of frauds.

In an action to recover the purchase-price of goods alleged to have been sold, to arrive, by plaintiffs to defendants, through a broker, it appeared that the broker entered the contract of sale in his book, made two copies thereof, one of which he delivered to the plaintiffs and sent the other by his clerk to the defendants in the usual course of business; that subse-

quently the broker had a conversation with one of the defendants as to the purchase, and informed him that he had executed the broker's note; that after the arrival of the goods defendants requested plaintiffs to enter the goods at the custom house in bond, which they did and then sent defendants an order for the goods and an account of the sale, to which no objection was made; that defendants made arrangements with warehousemen to store the goods, stating they had bought them, and that subsequently they rejected the goods on the ground that the quality was inferior to that contracted for. The defendants did not deny, as witnesses, the receipt of the broker's note. *Held,* that the evidence of such receipt was sufficient to require the submission of that question to the jury, and that a nonsuit was error.

(Argued March 9, 1881 ; decided March 22, 1881.) ·

Appeal from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made November 22, 1881, which affirmed a judgment in favor of defendant, entered upon an order nonsuiting plaintiffs on trial.

This action was brought to recover the purchase-price of one thousand bales of Dowrah jute alleged to have been sold by plaintiffs to the firm of William Walls' Sons, of which firm defendant is the surviving partner.

It is reported on a former appeal in 65 N. Y. 484.

The sale was made through a broker and the terms thereof, as claimed by plaintiffs, were stated in a broker's note received by them, and a duplicate of which they claimed was sent to and received by defendants' firm. The note is as follows:

> "Daniel L. Sturges,  
> Hemp Broker, 111 Wall Street,  
> New York, *May* 25, 1870.

Sold for Messrs. Newbery & Son, to Messrs. Wm. Wall's Sons, 1,000 bales Dowrah jute, shipped at London for New York, per ship "American Congress," in good order and free from damage, *a* 5¾c per lb. gold, cash, payable in fifteen days from delivery alongside ship. Purchasers to advance gold for duties.

Bkg. 1.20 per cent.

> DANIEL L. STURGES, *Broker.*"

The further material facts are stated in the opinion.

*F. R. Coudert* for appellants. There was a valid contract in writing, signed by the broker, Sturges, acting as agent for both parties. (*Butler* v. *Thompson*, 92 U. S. 412; *Merritt & Merritt* v. *Clason*, 12 Johns. 102; *Ex'rs of Clason* v. *Merritt*, 14 id. 484; *Justice* v. *Lang*, 42 N. Y. 493.) There was a valid delivery by the plaintiffs to the defendants and a receipt and acceptance by them, sufficient to take the case out of the statute of frauds; at least the evidence was sufficient to entitle the plaintiffs to go to the jury. (Hilliard on Sales, 229; Benjamin on Sales, § 144.) The acceptance of goods, or part of them, as required by the statute, may be constructive only, and the question whether the facts proven amount to a constructive acceptance is one of fact for the jury. (*Caulkins* v. *Hellmann*, 47 N. Y. 449; *Gray* v. *Davis*, 10 id. 285; Story on Sales, § 311.) The long delay which elapsed between the delivery of the goods and the letter rejecting them was of itself, alone and unexplained, sufficient to put the defendants upon their proof. (*Reed* v. *Randall*, 29 N. Y. 358; *Ely* v. *O'Leary*, 2 E. D. Smith, 355; Benjamin on Sales, § 162; *Hargous* v. *Stone*, 5 N. Y. 73; *Parks* v. *Morris A. T. & Co.*, 54 id. 592; *Garfield* v. *Paris*, 96 U. S. 563.) Receiving and keeping the bill was *per se*, unexplained, sufficient to throw the burden upon the defendants. (Abbott's Tr. Ev. 461.) A delivery by a vendor to a specified carrier of the goods purchased, in pursuance of the verbal order and direction of the purchaser, is in law a delivery to the latter, and *ipso facto* an acceptance by him of the property. (*Glen* v. *Whitaker*, 51 Barb. 451; *Carter* v. *Toussaud*, 5 B. & Ald. 855; *Rodgers* v. *Phillips*, 40 N. Y. 510; Benjamin on Sales, §§ 148, 149, 163, 175; 19 L. J., Q. B., 382; 15 Q. B. 458.) A mere difference in the language of the bought and sold notes will not constitute a variance, if the meaning be the same, and evidence of mercantile usage is admissible to explain the language, and to show that the meanings of the two instruments correspond. (Benjamin on Sales; *Bold* v. *Rayner*, 1 M. & W. 342; *Rogers* v. *Hadley*, 2 H. & C. 227; *Kempson* v. *Boyle*, 3 id. 763.) The court should be extremely cautious in

interfering with the province of the jury, who, by the principles and plan of our jurisprudence, have exclusive jurisdiction over the facts of the case. (*Labar* v. *Koplen*, 4 N. Y. 547, 548; *Stuart* v. *Simpson*, 1 Wend. 376; *Cook* v. *N. Y. C. R. R. Co.*, 3 Keyes, 476, 477; *Howell* v. *Gould*, id. 422; *Dunham* v. *Troy Union R. R. Co.*, id. 543; *Scofield* v. *Hernandez*, 47 N. Y. 313, 316; *Stone* v. *Flower*, id. 566; *Sheldon* v. *Atlantic F. & M. Ins. Co.*, 26 id. 465; *First Nat. Bank of Springfield* v. *Dana*, 79 id. 109; *Low* v. *Hall*, 47 id. 104; *Thomas* v. *Lumley*, 50 How. Pr. 108.)

*Richard H. Huntley* for respondent. The contract was void under the statute of frauds, and there was no acceptance of the jute. (*Stone* v. *Browning*, 68 N. Y. 598; 51 id. 211; *Heermance* v. *Taylor*, 14 Hun, 149.)

EARL, J. The plaintiffs sued the defendants in 1870, to recover the price of the Dowrah jute now in question. The defendants defended that action upon the ground that the contract of sale was invalid under the statute of frauds, and also upon the ground that the jute was not of the quality required by the alleged contract. The plaintiffs were nonsuited, and then appealed to the General Term and the Commission of Appeals, and the judgment of nonsuit was sustained upon both grounds. (35 Super. Ct. 106; 65 N. Y. 484.) The plaintiffs then commenced this action and the defendants again defended upon the same grounds, and the plaintiffs were again nonsuited upon the ground that the contract of sale was invalid under the statute of frauds; and upon that ground the judgment of nonsuit was sustained upon appeal by the plaintiffs to the General Term.

On the last trial there was evidence tending to show that the jute was of the quality required by the alleged contract, and hence, if there was a valid contract, the plaintiffs were improperly nonsuited. The sole question, therefore, for our consideration is whether there was a valid contract, or evidence tending to show there was, which should have been submitted to the jury.

In the prior case the Commission of Appeals impliedly decided that if the broker's note of the sale had been delivered to the defendants as well as to the plaintiffs, there would have been a valid contract of sale within the statute of frauds, and such is the law (*Merritt* v. *Clason*, 12 Johns. 102; 14 id. 484; *Butler* v. *Thomson*, 92 U. S. 412); and so the learned counsel for the plaintiffs conceded it to be on the argument before us. It was held in the prior case that there was not sufficient evidence that the broker's note was delivered to the defendants, and so the trial judge held in this case in nonsuiting the plaintiffs.

We have carefully compared the evidence given upon this trial with that given upon the former trial, and so far as it bears upon the delivery of the broker's note, it is not precisely the same. The difference is not great or marked, but sufficient to call for a different disposition of the case. There was no evidence that the broker's note was not delivered to the defendants and the evidence did not show certainly that it was so delivered, but we do not see how it can well be doubted that there was evidence sufficient for submission to the jury upon the question of such delivery, and we will briefly call attention to it. In May, 1870, the plaintiffs had notice of the shipment to them of the jute from London, and they employed the broker to sell it. He called upon the defendants and offered it to them, and they made an offer for it which he communicated to the plaintiffs and they accepted it, and then he informed the defendants of the acceptance and they replied that it was all right. He then entered the contract of sale in his book, and made two copies thereof, signed by him, and sent one copy, called the broker's note, to the plaintiffs which they received, and he sent the other copy to the defendants, and as stated above, there is no positive or direct evidence that they received that. He sent it in the usual course of his business by one of his clerks, a boy fifteen or sixteen years old. The boy was not sworn, and at the time of the trial was probably dead. From the fact that it was thus sent there is a strong probability that it reached the defendants, particularly as

neither of them was called as a witness to deny that they received it. While the mere fact that it was thus sent was not sufficient evidence that they received it, but little additional evidence was needed to authorize a jury to infer that it did reach them. This was on the 25th day of May. The broker testified that subsequently he had a conversation with one of the defendants as to his purchase of the jute, and informed him that he had executed the broker's note.

The jute arrived in the latter part of July, and the plaintiffs then notified the defendants of its arrival, and called upon them for the gold to pay the duties. The defendants, instead of paying the gold, as required by the contract, requested the plaintiffs to enter the goods at the custom house in bond, which they did; and then they delivered to the defendants an order on the vessel for the jute, and sent them an account specifying the quantity of jute in bales and pounds, and debiting them for the purchase-price thereof, to which the defendants made no objection. The defendants then made an arrangement with warehousemen to store the jute, informing them that they had bought it, and after the warehousemen had commenced carting the jute, the defendants informed them that they had seen the jute, did not think it was such as they had bought, thought they should reject it, and told them not to store it on their account. The warehousemen, notwithstanding this, stored the jute on account of whom it might concern. A few days later the defendants informed the warehousemen that they had concluded positively to reject the jute, and they then addressed a letter to the plaintiffs, in which they stated as follows: "On examination of the 1,000 bales of jute we bought of you we find the whole to be in most respects different from any usually imported under that name. The quality is so inferior that it is not fit for manufacturing purposes, totally unsalable and unmerchantable, and hence we regret to inform you that we reject it and give up the purchase."

The defendants were business men, and must be presumed to have known what was essential to a valid contract, and all their conduct indicates that they supposed they had made a

valid contract. They were informed that the broker had exe cuted the broker's note; they subsequently admitted that they had bought the jute; they accepted an order for its delivery, and dealt with it as if they had bought it and had the right to control it. They finally rejected it, not on the ground that they had not made a valid contract for its purchase, but upon the sole ground that it was not such jute as they had the right to demand under their contract. Upon all these facts it seems to us quite clear that there was evidence sufficient to authorize the inference by the jury that they had received the broker's note sent to them, and thereby considered themselves under a valid contract. The judge presiding at the trial therefore erred in nonsuiting the plaintiffs.

The plaintiffs also claim that there was evidence tending to show such a delivery and acceptance of the jute, or a portion of it, as to satisfy the statute of frauds; but we have not considered this claim, and make no determination now as to it.

For the error mentioned, the judgment should be reversed and a new trial granted, costs to abide event.

All concur, except FOLGER, Ch. J., who being in doubt did not vote; RAPALLO, J., absent.

Judgment reversed.