In the Matter of the Application of FREDERICK B. HUXLEY, Respondent, for a Stay of Arbitration Proceedings. REISS & BERNHARD, INC., Appellant.

Argued March 5, 1945; decided April 12, 1945.

*Joseph Joffe* for appellant. I. The broker was authorized to make a contract providing for arbitration. II. Because of his conduct the seller is estopped from denying authority of the broker to execute " bought " and " sold " notes with the arbitration clause in them. (*Matter of Tanenbaum Textile Co.* v. *Schlanger*, 287 N. Y. 400; *Murray* v. *Cunard Steamship Co.*, 235 N. Y. 162; *Matter of Exeter Manufacturing Co.* v. *Marrus*, 254 App. Div. 496; 1 Williston on Contracts [Rev. ed], §§ 90a, 90b; Restatement, Agency, §§ 35, 36, 43, 49.) III. The contract made by the broker is binding on the seller because of the custom and practice in the industry. (*Krstovic* v. *Van Buren*, 235 N. Y. 96; 3 Williston on Contracts [Rev. ed.], §§ 653, 661.) IV. The broker's notes constituted the contract between the seller and the buyer. (*Newberry et al.* v. *Wall*, 84 N. Y. 576; *Childs* v. *Riley Co.*, 186 App. Div. 775; *Cohen-Hall-Marx Co.* v. *Psaki*, 169 N. Y. S. 72; *Salmon* v. *Berg*, 37 N. Y. S. 2d 985, 266 App. Div. 951; *Comptoir Commercial D'Importation* v. *Zabriskie*, 127 Misc. 461; *Gravenhorst* v. *Turner*, 215 App. Div. 617; *Bache* v. *Bankograph Co., Inc.*, 120 Misc. 44; *Avondale Mills* v. *Benchley Bros.*, 244 Mass. 153; *Bibb* v. *Allen*, 149 U. S. 481; *Wood* v. *Lovett*, 313 U. S. 362; *Colonial Operating Corp.* v. *Hannan Sales & Service*, 265 App. Div. 411; *Matter of Kramer & Uchitelle, Inc.*, 288 N. Y. 467; *Matter of Kahn & Feldman, Inc.* [*Rothschild*], 290 N. Y. 781; *Matter of Tanenbaum Textile Co.* v. *Schlanger*, 287 N. Y. 400.) V. The contracts of the parties required them to arbitrate. (*Matter of Lipman* [*Haeuser Shellac Co.*], 289 N. Y. 76; *Matter of Kahn* [*National City Bank*], 284 N. Y. 515.) V. The determination whether there was a modification of the contracts made by the broker is not for the court but is a matter which must be submitted to the arbitrators. (*Matter of Lipman* [*Haeuser Shellac Co.*], 289 N. Y. 76; *In re Pahlberg Petition*, 131 F. 2d 968; *Goldhill Trading & Shipping Co., etc.*, v. *Caribbean Ship Co.*, 56 F. Supp. 31.)

*W. Ray Converse* for respondent. I. The broker was not authorized to make a contract providing for arbitration. II. The broker's notes did not constitute a contract between buyer and seller. (*Poel* v. *Brunswick-Balke-Collender Co.,* 216 N. Y. 310; *Friedman & Co.* v. *Newman,* 255 N. Y. 343; *Matter of Tanenbaum Textile Co.* v. *Schlanger,* 287 N. Y. 400; *Metropolitan Life Ins. Co.* v. *Childs Co.,* 230 N. Y. 285; *Payne* v. *Burnham et al.,* 62 N. Y. 69.) III. No one is under a duty to resort to arbitration unless by clear language he has so agreed. (*Matter of Lehman* v. *Ostrovsky,* 264 N. Y. 130.) IV. If the broker's notes constituted a contract just as they stood it was an absolutely void contract. (*Matter of Kramer* v. *Uchitelle, Inc.,* 288 N. Y. 467; *Matter of Kahn & Feldman, Inc.* [*Rothschild*], 290 N. Y. 781.)

LOUGHRAN, J. Transactions in respect of a sale of merchandise are the subject matter of the controversy. The parties are the seller and the buyer. The dispute concerns the quality of the goods. The present proceeding is one which the seller brought for a stay against a demand by the buyer for arbitration of their differences. Whether there exists a valid antecedent contract for arbitration thereof is the question for decision. After trial at an Equity Term, the court found that no such agreement was in force and thereupon the seller's application for a stay was granted. In that disposition of the matter, the Equity Term was affirmed by a judgment of the Appellate Division from which the buyer has appealed to this Court.

This state of the record requires us first to notice a point in respect of our jurisdiction. Section 1467 of the Civil Practice Act says: " An appeal may be taken from an *order* made in a proceeding under this article [Article 84 — the arbitration statute] or from a *judgment entered upon an award.*" (The emphasis is ours.) In this instance no award was made. Hence the judgment of the Appellate Division had no warrant in the statute. There is in the record, however, a final order of that court in which the provisions of its judgment are duplicated. We treat this order as the paper appealed from and thereby bring ourselves to the merits. (Cf. *Matter of Bunting,* 288 N. Y. 388.)

The affair in issue was negotiated by a corporate merchandise broker employed for the purpose by the seller. Over its signature, this broker supplied to the parties statements of its handling of the matter which they retained without comment. The material items of the statement received by the seller (which bore the label "*Sold Note*") were these: " Sold to Reiss & Bernhard, Inc. [the buyer] * * * For account of F. B. Huxley & Son [the seller] * * * Terms net cash payable on receipt of invoice. Swell guarantee ¼% ILNS * * * If incorrect please advise immediately * * * Quantity 1000 cs. Article 6/10 Fancy cut beets * * * Price 3.72 doz. * * * ' Any controversy or claim arising out of or relating to this contract or the breach thereof, shall be settled by arbitration, in accordance with the rules then obtaining, of the Association of Food Distributors, Inc., New York, and judgment upon the award rendered may be entered in the highest court of the forum, state or federal, having jurisdiction.' Seller to conform with National Pure Food Laws. This memorandum shall be subordinate to more formal contract when and if such contract is executed. In the absence of such contract this memorandum represents the contract of the parties." The statement received from the broker by the buyer was a "*Bought Note*" wherein the same particulars were recited.

After the receipt by the parties of these statements of the broker, the seller transmitted to the buyer and to the broker other writings which in the material parts thereof are exemplified by the following specimen: " Reiss & Bernhard [the buyer] * * * To B. F. Huxley & Son [the seller] Dr. * * * 1000 cases 6/10 Cut Beets 500 doz. 3.72 $1860. Less ¼ of 1% swells 4.65. $1855.35 * * * Conditions of Sale * * * 1½% discount allowed if invoice is paid within ten days of date of invoice * * * Swells guaranteed only six months after delivery * * * Other claims of whatever kind must be made five days after receipt of goods * * * No allowance will be made for goods lost or damaged in transit * * *." These writings from the seller were held by the buyer without dissent therefrom.

In that condition of things the goods were delivered and paid for.

The foregoing, we believe, is an adequate statement of the fact situation. The main contest is upon this issue: Did the documents which the broker delivered to the parties (with the provision therein for arbitration) constitute the contract of sale, with the result that the buyer's demand for arbitration was justified; or, did the writings which thereafter went forth from the seller to the buyer annul such earlier documents (arbitration clause and all), with the result that the buyer cannot prevail, since a contract for arbitration of a future dispute must be in writing? (See Civ. Prac. Act, § 1449).

The documents which the broker delivered to the parties were bought and sold notes — instruments which have long been used in the marketing of commodities through merchandise brokers. Four forms of these notes have been recognized. (4 Amer. & Eng. Ency. of Law [2d ed.] 751.) The first (which was employed in the present case) is one in which the broker professes to act for both parties whose names are disclosed in the notes. An acceptance by the parties of bought and sold notes of that type makes a contract in the terms thereof, inasmuch as thereby each party admits that the broker was his agent in the transaction. (Benjamin on Sale [7th ed.], 293–294.) The bought and sold notes in question were still in the possession of the parties when the goods were delivered and paid for. Under such circumstances, these notes necessarily became a contract binding upon the buyer and seller respectively. (*Newberry et al.* v. *Wall,* 84 N. Y. 576; *Childs* v. *Riley Co.,* 186 App. Div. 775. See *Remick* v. *Sanford,* 118 Mass. 102.)

We inquire, then, as to the effect of the writings from the seller which the buyer retained after the bought and sold notes had become operative. The Equity Term said that these later writings " operated in law to nullify the arbitration clauses contained in the documents issued by the broker." Upon that proposition, we are of the opposite opinion.

At the top of each of these later writings, the buyer is described by the seller as being indebted to him — the seller — and next comes a statement of the quantity and price of the merchandise. This much was no more than a bill rendered. The " Conditions of Sale " (which were printed on the reverse side) did indeed make reference to something which is not mentioned in the bought and sold notes, viz: " 1½% discount allowed if

invoice is paid within ten days of date of invoice." Even so, this new item is accounted for by uncontradicted expert testimony in this phrase: " One and one-half percent is the customary canned goods discount." But beyond all this, the seller was a business man who must be presumed to have known what was essential to a valid contract (*Newberry et al.* v. *Wall,* 84 N. Y. 576, 581); hence it is most significant that his so-called conditions of sale made neither provision nor place for any signature by the buyer — whose confirmation as the party to be charged was necessary to the validity of a contract of sale under the Statute of Frauds. (Personal Property Law, § 85.) Clearly, as we think, these later writings of the seller were at best mere invoices which did not affect the earlier bought and sold notes in any way. (See *Matter of Tanenbaum Textile Co.* v. *Schlanger,* 287 N. Y. 400.)

The orders should be reversed and the proceeding dismissed, with costs to the appellant in all courts.

LEHMAN, Ch. J., LEWIS, CONWAY, DESMOND, THACHER and DYE, JJ., concur.

Orders reversed, etc.