Isidor Wasservogel,
Spec. Ref. Petitioner, a textile fabric importer, instituted an arbitration proceeding against respondent, a textile converter, pursuant to the provisions of an alleged contract between them. Upon respondent’s motion to stay these proceedings, a framed issue was referred to this court, to hear and determine, “ whether or not the alleged agreement, dated July 28, 1960, revised December 9, 1960, was made.”
The record establishes that one Martin Gross & Co. (hereinafter referred to as “ Gross ”), a textile broker, acted as agent for both parties here involved. Gross was authorized by petitioner to sell a quantity of imported fabric. It was offered by this broker to respondent and upon respondent’s alleged acceptance thereof, a sales note, dated July 28, 1960, No. 6774, was prepared in triplicate by Gross. One copy thereof was retained by the broker-agent, and one copy was forwarded to each of the parties.
This sales note, in addition to specifying yardage, price and delivery, also contained the following statement: “ Subject to *778 customer’s approval of 25 yard sample to be airmailed at seller’s expense. ’ ’ On December 9, 1960, Gross, as agent for petitioner and respondent, issued a “ revised ” sales note, similarly bearing No. 6774. This sales note differed from the July sales note in that the dates of delivery were changed and no reference to approval of a sample by respondent was made therein.
The credible evidence shows that respondent retained both the July and December sales notes from the dates of their receipt until their production here in court. At no time in the intervening year did respondent indicate in any way its rejection of any of the terms or conditions set forth therein. It is respondent’s contention, however, that the approval clause in the first sales note prevented such “memorandum” from becoming a binding contract until it approved the sample submitted by petitioner. Such approval, respondent urges, was never given.
This argument is without merit here, for the credible testimony clearly establishes that Gross, as agent for both parties, inserted the “ approval clause ” merely to give respondent a right of cancellation. It is apparent that a right of cancellation can exist only if a contract has theretofore been entered into by the parties. Without a contract, no need would exist for a right of cancellation. Nevertheless, an agreement subject to later cancellation must necessarily be deemed to be a valid and binding contract.
It must be kept in mind that this court is not determining the merits of any of the issues between the parties regarding the subject matter of their contract. The sole question here is whether the two sales notes constitute a binding agreement between petitioner and respondent. In my opinion, the purchaser and seller here are bound by the two sales notes issued by their authorized agent. At the most, the provision relating to approval of a sample, as set forth in the July sales note, constituted a condition subsequent to the execution of the binding agreement which Gross, as agent for both parties, was, by law and by custom in the textile industry, clearly authorized to make (Matter of Huxley, 294 N. Y. 146; Matter of J. K. Knitting Mills [Dorgin], 273 App. Div. 591).
Despite respondent’s vehement assertion that it never approved the submitted sample of cloth, there is sufficient evidence in the record to the contrary. Moreover, the proof, as above noted, indicates that it retained both sales notes without objection and did not respond in any way or reject petitioner’s letter of confirmation regarding the requested change in delivery dates, as appears in the second or “ revised ” sales note sent by Gross.
*779 Thus, the transaction between the parties can be summed up as follows: (1) respondent was showy certain goods by Gross; (2) respondent placed an order for such goods with Gross; (3) respondent reserved the right of cancellation of his order if an approval sample of the goods to be delivered at a later date was unsatisfactory to it. These three steps constitute a valid contract between petitioner, as the seller of the goods involved, and respondent, as the purchaser. Contrary to respondent’s contention, the approval clause set forth in the first sales note in no way detracts from the validity and binding effect of such agreement.
There is no merit to respondent’s argument that the minds of the parties did not meet. Respondent bases this contention on the fact that its copies of the sales notes do not contain any reference to the payment of commissions, while petitioner’s copies of the sales notes set forth the amount of commissions to be paid to the broker. Inasmuch as the custom of the industry dictates that commissions are paid by the seller, there was no need for any mention of them to be made in the copies of the sales notes delivered by Gross, as agent for both parties, to respondent, as purchaser. Respondent, long established in the textile industry and well acquainted with its customs, must be deemed to be aware that it was not obligated for the payment of any commissions and that petitioner, as the seller, was the sole person to whom the broker could look for payment thereof. The omission complained of by respondent, therefore, is clearly immaterial.
Upon the evidence before me, therefore, I hold that the sales notes of July 28 and December 9, 1960, constitute a valid and binding agreement between the parties, necessitating the arbitration of any and all disputes arising thereunder.
Decision is rendered accordingly in favor of petitioner. No costs are awarded.