*Western District*

**ROBERT H. EASTMAN**

**v.**

**CRISTY CHEMICAL CORPORATION**

Argued: January 15, 1964
Decided: March 11, 1964

*Present*: Garvey, P. J., Moore & Sloan, JJ.

Case tried to *Allen, J.* in the Central District Court of Worcester. No. 120,974.

*Garvey, P. J.* The report in this case was established on petition of the plaintiff. It is an action of contract for commissions under the terms of a written contract. The defendant denied owing the plaintiff anything. There was a finding for the defendant.

*At the trial there was evidence that* the

plaintiff, formerly an officer of the defendant corporation (company) entered into a written agreement with the company whereby he became its sales agent for distribution of its automotive products for a period commencing March 1, 1959 and ending February 28, 1960. The contract in its pertinent parts provided that the company agreed to pay the plaintiff a commission at varying rates on its products *"sold by him"* within a specified territory. Paragraph 6 of the agreement reads: "In the event the COMPANY suffers a loss by reason of a customer to whom the AGENT has sold merchandise, or who has been credited for selling, failing to pay his account, or any part thereof, the AGENT agrees to refund to the COMPANY any commission for which he has received credit with regard to the said sale or account".

The plaintiff asserts he is entitled to commissions for merchandise "sold by him" to certain retailer associations. At the time his contract terminated the merchandise, which he claims to have sold, was in the possession of retailer associations under circumstances outlined below.

The trial justice made the following findings of fact:

"Plaintiff had been an officer of the defendant corporation but became dissatisfied. By mutual agreement, this relationship was terminated and an agreement in writing was entered into whereby the plaintiff became the agent for the distribution of the defendant's products throughout New

England for a period beginning March 1, 1959 and terminating February 28, 1960. The rate of commission was set forth in the contract. The defendant had a policy which was known to the plaintiff and which had existed while he was an officer of the defendant corporation, whereby large quantities of goods were shipped to warehouses of retailer associations from which they were drawn by member dealers as needed. At the end of each fiscal year, in February, an inventory of the stocks in these warehouses was taken, and the stock still on hand was rebilled to the association. There were allowances made to the associations for storage of the goods. The defendant had access to the goods to sell or deliver to other customers if it desired. Defendant carried insurance on them. Plaintiff himself checked some of the inventories. Plaintiff now sues for commission on goods delivered to these warehouses claiming to be entitled to commission on all goods delivered to them during the term of his contract regardless of whether they have been delivered to the retailers or rebilled to the association.

"I find the plaintiff was not entitled to commission on goods delivered to the association's warehouses until they were withdrawn from the warehouses by the retailers, and that until such time there was not an actual sale for which commissions were due under the contract".

The reported evidence shows that products of the company would be shipped to warehouses of the retailer associations, and on order, as needed, delivered to its members who were gasoline station operators. The

company invoices of shipments to these associations read: "Terms 2%—January 10, 1960, 1%—February 10, 1960".

At the point in the trial when it had been testified that the invoice was the final sale document, the plaintiff entered his objection to the introduction of any further evidence tending to vary the terms of the invoice and requested the court to strike from the record previously introduced evidence which might suggest a variance from the terms of the invoice. The evidence that had been introduced consisted of testimony of agreements between the company and the retailer associations which provided that the company could (a) retake the merchandise from the associations' warehouses, at its option, prior to shipment to association members (b) that it had been the custom to rebill all such retailer associations for merchandise on hand at the end of each February, and (c) goods shipped to the retailer associations prior to such rebilling was not deemed sold until ordered by its members. No ruling by the trial justice seems to have been made on this motion.

The court then admitted additional evidence that an inventory of such merchandise was made by the company's representatives at the close of each fiscal year (the end of February) ; that the plaintiff had made some of such inventories, and testimony from the defendant's bookkeeper that no payments on the retailer association accounts which are the subject of this litigation had been received

prior to the commencement of this action. When objection was made by the plaintiff to this line of inquiry the trial justice admitted the evidence stating that he would reserve this ruling until later in the trial. No ruling by the trial justice was ever made, and it is clear from his findings that he considered this evidence in making his decision. The plaintiff duly filed requests for rulings of law directing the trial justice's attention to his motion to strike and to his objection to the admission of the evidence recited above. They were denied by him "as not proper" manner of raising admissibility of evidence". It is to the denial of these rulings the plaintiff claims to be aggrieved.

When evidence is received conditiinally, or, as it is commonly called "de bene", the burden is upon the objecting party to move to strike, generally when the evidence is closed, *Alden Bros. Co. v. Dunn,* 264 Mass. 355, 362, Massachusetts Practice Series, Hughes on Evidence, §216.

In District Courts, if the ruling is adverse, to claim a report and perfect the same within five days after the close of the evidence. G. L. (Ter. Ed.) c.231, §108. Rule 27 of the Rules of the District Courts. No such motion was made by the plaintiff. Upon failure to do this the evidence thus admitted will remain for whatever probative effect it may have, unless its consideration is prohibited by another rule of law.

The plaintiff contends that this evi-

dence violated the "parol evidence rule" as it tended to vary or contradict the terms of the contracts between the company and the retailers associations as shown by the invoices, and therefore had no probative force and could not be considered by the trial justice. In *Kerwin v. Donaghy,* 317 Mass. 559, 568, the court said:

"Though often stated in terms of the admissibility of evidence, the so-called 'parol evidence rule' is really a rule of substantive law. Extrinsic evidence, even though admitted, cannot control the words of a document that purports to express the whole transaction."

See also Hughes on Evidence, §§204, 421.

We find no Massachusetts decisions defining the word "invoice".

■ Generally an "invoice" is not considered a complete and exclusive statement of the terms of an agreement, and there was evidence in the instant case that it was not so intended. "An invoice as such, is not a contract. An invoice is a mere detailed statement of the nature, quantity, and cost or price of the things invoiced." *Tanenbaum Textile Co., Inc. v. Schlanger,* 287 N.Y. 400, 404. Writing transmitted by seller to buyer stating that buyer was indebted to seller in certain amount for certain quantity of merchandise sold for certain price and containing printed conditions of sale, but without making any provision for buyer's signature, was merely an "invoice" and not a contract of sale, and hence could not affect a prior binding sales contract

between the parties. *In re Huxley,* 294 N.Y. 146. Invoice is synonymous with charge or bill. *George M. Jones Co. v. Canadian Nat. Ry. Co.,* 14 F2d 852, 855. See also *Atlantic Steel & Iron Co. v. Pifer,* 12 Mass. App. Dec. 1.

We are of opinion that the rule of the *Kerwin* case has no application to the facts in this case as the admission of the evidence objected to did not tend to vary the terms of written contracts between the company and the retailers associations. The evidence was admissible to show that there had not been a sale to these retailer associations within the terms of the plaintiff's contract.

The trial judge was not obliged in making his determination as to whether a sale had been made for which the plaintiff would be entitled to a commission to limit the evidence to the invoices. He properly admitted evidence as to the terms of the agreements between the company and the retailer associations. The trial judge was justified in finding there was no sale until the merchandise was ordered by the members of the retailer associations.

█ It also seems to us from the wording of paragraph 6, set out above, the parties contemplated a sale accompanied by payment before the plaintiff would be entitled, without condition, to a commission, notwithstanding other provisions in the contract for payment of commissions at stated intervals on accounts "credited" to the plaintiff. Otherwise these

provisions for refunds to the company on non-payment accounts would be ineffective. It was incumbent upon the plaintiff to show that these goods had been "sold by him" during the period of his contract with the company, which he did not do.

There being no error *the report should be ordered dismissed.*

C. A. Peairs, Jr., of Westboro, for the Plaintiff.
A. E. Maykel, of Worcester, for the Defendant.