■ WOODCREST FABRICS, INC., Respondent, v B & R TEXTILE CORPORATION, Appellant. — Judgment, Supreme Court, New York County (Eugene R. Wolin, J.), entered on June 30, 1982, reversed, on the law, without costs and without disbursements, and the petition dismissed. Sandler, J. P., concurs in a memo-

randum in which Carro, J., concurs; Bloom, J., concurs in the result only, and Milonas, J., dissents in a memorandum in which Lynch, J., concurs, as follows:

Sandler, J. P. (concurring). The petitioner-respondent Woodcrest Fabrics, Inc. (Woodcrest) is a New York corporation, with offices in New York City, primarily engaged in converting textile fabrics purchased in the greige from various sources. The respondent-appellant B & R Textile Corp. (B & R) is a New York corporation, also with offices in New York City, primarily engaged in the conversion of textile fabrics. On seven occasions during 1981 B & R, acting through B. J. Stein Ltd. (Stein), textile brokers, sold Woodcrest various quantities of 100% textured polyester tissue faille. The procedure followed in these transactions was that Stein, acting on behalf of B & R, offered to sell the fabrics to Woodcrest, which accepted the offers and ordered the fabrics. For each transaction Stein sent sales notes to both the buyer and the seller confirming the sale. The sales notes set forth the terms of the transaction and provided for the settlement of any controversy arising under the contract by arbitration in accordance with the rules then obtaining of the General Arbitration Council of the Textile Industry. These notes included above the arbitration clause a notice in prominent print to the effect that duplicate copies of the note have been simultaneously sent to the buyer and seller, and that "the acknowledgment of sale by either party shall bind both parties to all of the terms and conditions set forth herein unless written notice of objection to its contents shall be made within 10 days after receipt of the sale note." The sales notes further included the statement that Stein was acting solely as broker. Four of these transactions, those embodied in sales notes dated January 27, August 20, September 18 and October 22, 1981, were completed without incident. One transaction, embodied in a sales note dated June 18, 1981, was canceled on the agreement of both buyer and seller after Woodcrest had informed the broker, first by telephone and then in a follow-up letter dated June 25, 1981, of its desire to condition the order on "finding someone who can prepare the goods adequately for printing." The controversy with which we are concerned developed as a result of Woodcrest's refusal to pay for goods received pursuant to the transactions reflected in sales notes dated December 1 and December 23, 1981 on the claim that the goods were substandard and defective. By a demand for arbitration dated March 11, 1982, B & R sought to initiate arbitration proceedings against petitioner with regard to the failure to pay for these two shipments. Claiming that arbitration had never been discussed or agreed to with either the broker or B & R, and that the arbitration clauses on the sales notes were unauthorized and not binding, Woodcrest moved by order to show cause for an order staying the arbitration proceedings on the ground that there were no valid agreements to arbitrate. In opposition to the petition B & R submitted affidavits by an employee of Stein familiar with the transactions, B & R's president, and two independent brokers. Each affidavit attested that it is normal practice and usage for textile brokers in New York City to confirm transactions with the sending of a sales note to both the buyer and seller, and that it is standard in the textile industry in New York City for such notes to embody an arbitration provision. Indeed, the affidavits by the two independent brokers assert that all such sales notes contain an arbitration provision. No reply affidavits were submitted by Woodcrest. Notwithstanding Woodcrest's failure to put in issue the prevailing practice in the textile industry in New York City, or to disclaim its knowledge at any pertinent time of that practice, or its awareness of the arbitration clause on the face of the sales notes, Special Term stayed arbitration. The court concluded that there had been a failure to establish an agreement by Woodcrest to arbitrate under the principles set forth in *Matter of Marlene Inds. Corp.*

(*Carnac Textiles*) (45 NY2d 327) and *Schubtex, Inc. v Allen Snyder, Inc.* (49 NY2d 1). We disagree and would accordingly reverse the order staying arbitration for two separate reasons. First, under long-established principles, retention without objection for a reasonable period of time of broker's sales notes in which "the broker professes to act for both parties" constitutes a ratification of the broker's authority to enter into the purported transaction, and where the sales notes include an arbitration provision, constitutes a ratification of the broker's authority to include such a provision. (*Matter of Huxley*, 294 NY 146, 150; *Matter of J. K. Knitting Mills* [*Dorgin*], 273 App Div 591; *Matter of Catz Amer. Sales Corp.* [*Holleb & Co.*], 272 App Div 689.) Second, applying what we believe to be the principle set forth in *Schubtex, Inc. v Allen Snyder, Inc.* (*supra*, p 6), the undisputed evidence of industry practice and custom, together with all the other circumstances presented, make this a proper case for "a determination that a written provision for arbitration has, in fact, been incorporated in the oral agreement of the parties in consequence of either trade usage or a prior course of dealings". The first issue presented here was addressed by the Court of Appeals in *Matter of Huxley* (*supra*). A sale of goods had been negotiated by a corporate merchandise broker employed for the purpose by the seller. Thereafter the broker supplied to the parties' statements embodying the terms of the transaction. The statements included an arbitration provision. It further set forth that in the absence of a more formal contract the memorandum represented the contract of the parties. Following a disagreement, the buyer sought arbitration and the seller resisted. The Court of Appeals described the statements delivered to the parties (p 150) as "bought and sold notes" of a kind in which "the broker professes to act for both parties whose names are disclosed in the notes. An acceptance * * * of bought and sold notes of that type makes a contract in the terms thereof, inasmuch as thereby each party admits that the broker was his agent in the transaction * * * The bought and sold notes in question were still in the possession of the parties when the goods were delivered and paid for. Under such circumstances, these notes necessarily became a contract binding upon the buyer and seller respectively." A comparison of the sales notes utilized here with the bought and sold notes described in the *Huxley* opinion discloses no difference in the nature of the role performed by the brokers nor any legally significant distinction in the terms of the notes. It is true that in *Huxley* arbitration was resisted by the seller who had employed the broker, but the opinion of the court is clear that the arbitration provision was binding on both parties. The principle was applied by this court in *Matter of J. K. Knitting Mills* (Dorgin, *supra*), also involving an arbitration provision. The court said (pp 592-593): "Since a broker's authority is usually oral, however, and the circumstance that he represents both sides may under certain conditions make his acts voidable, especial and usually controlling importance attaches, in the practical conduct of commercial transactions, to whether the buyer and seller retain the broker's memoranda without objection for a reasonable period of time. Ratification is there equivalent to prior authorization * * * Failure to object promptly thus furnishes a useful, objective test of whether the broker was authorized to make the deal expressed in the memoranda." Nothing in *Matter of Marlene Inds.* (*supra*), or in *Schubtex, Inc. v Allen Snyder, Inc.* (*supra*), discloses an intent on the part of the Court of Appeals to overrule *Matter of Huxley*. Neither of these latter cases involved a transaction negotiated through a broker and embodied in sales notes sent to both parties. *Matter of Huxley* was not referred to in either opinion nor was there any occasion to do so. Both decisions turned on an interpretation of subdivision (2) of section 2-207 of the Uniform Commercial Code which does not apply either in terms or in principle to the rule set forth in

*Matter of Huxley* that obtains with regard to a broker-negotiated transaction. The problem addressed in section 2-207 of the Uniform Commercial Code is the legal effect of the transmission by one party to another of "[a] definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time" that includes terms "additional to or different from those offered or agreed upon". The Court of Appeals held in *Marlene* that the inclusion in such an acceptance or written confirmation of an arbitration clause not previously agreed to was a material alteration and, accordingly, that provision did not become part of the contract, notwithstanding the failure of the party receiving the notice to give notification of objection within a reasonable time. This principle was applied by the Court of Appeals in *Schubtex* to a situation in which a party received, without objection, several such memoranda with regard to different transactions that included arbitration as an additional term. Although superficially similar, the issue addressed in *Matter of Huxley* has a separate dimension and involves the quite distinct question of ratification of an agent's authority. Where a broker has been authorized by two parties to consummate a transaction, it is obviously sound practice for the broker to make sure that it has correctly discharged its duties by transmitting to each party a statement setting forth the completed transaction with a request to be notified if the statement does not accurately report the agreement. In *Matter of Huxley,* the Court of Appeals squarely held that the retention of such a note by a party, without objection, constitutes a ratification of the broker's authority, and accordingly an acceptance of the terms set forth, including an arbitration provision. As already noted, this principle has been applied by this court in varying situations in carefully detailed opinions. The totality of the circumstances detailed earlier make this a very strong case for applying the principle. *Raam Fabrics v Scott Corp.* (88 AD2d 853), a recent decision of this court, cannot fairly be relied upon as authority to the contrary. Although *Matter of Huxley* had been referred to in passing in the brief of the party seeking arbitration, it is apparent from the brief memorandum opinion that the issue had not been addressed by the court. A possible reason for the omission is that, in any event, the result in *Raam Fabrics (supra),* was in no way inconsistent with the principles set forth in *Matter of Huxley.* As noted in the memorandum opinion, it was alleged in *Raam Fabrics,* without contradiction, that the party resisting arbitration had canceled the agreement on the date that it was made, an action that would clearly be incompatible with the principle of ratification of an agent's authority on which *Matter of Huxley* rests. As already noted, the second ground for denying the motion to sustain arbitration turns on an interpretation of the court's opinion in *Schubtex.* As set forth in the opinion, the parties had entered into several transactions in which the petitioner gave oral orders for the purchase of textiles and the buyer sent confirmatory orders, including on the reverse side a provision for arbitration. The petitioner resisted a demand for arbitration, denying the existence of an express agreement to arbitrate. The court concluded that the evidence was insufficient as a matter of law to support a finding of an express agreement to arbitrate. Addressing the claim that such an agreement could be inferred from the two prior transactions between the parties, the court noted that in neither of these prior dealings had the parties arbitrated a dispute, nor was there any evidence that the clause was material in their negotiations. However, the court went on to observe (p 6) the following: "Although evidence of a prior course of dealing is relevant in determining whether the parties have agreed to submit their dispute to arbitration and a determination that their oral agreement included a provision for arbitration could in a proper case be implied from a course of past conduct or the custom

and practice in the industry, such a determination must be supported by evidence which affirmatively establishes that the parties expressly agreed to arbitrate their disputes. As the concurring members of the court concede, 'evidence of a trade usage or of a prior course of dealings may normally be utilized to supplement the express terms of a contract for the sale of goods' * * * We would note also that this doctrine has been held to be applicable to arbitration agreements. (E.g., *Matter of Acadia Co. [Edlitz]*, 7 NY2d 348; *Matter of Helen Whiting, Inc. [Trojan Textile Corp.]*, 307 NY 360.) However, a determination that a written provision for arbitration has, in fact, been incorporated in the oral agreement of the parties in consequence of either trade usage or a prior course of dealings must be supported by evidence in the record. We conclude that there was no such evidence in this case." The problem of construction arises from the phrase in the above-quoted language relating to the requirement of "evidence which affirmatively establishes that the parties expressly agreed to arbitrate their disputes." Undeniably, considered in isolation, the last-quoted phrase lends itself to the construction, in effect adopted in the dissenting opinion, that an enforceable agreement to arbitrate requires an explicit articulated statement of agreement to arbitrate. When the opinion is considered as a whole, and particularly in light of the interpretation set forth clearly in the concurring opinion, and the court's response to that interpretation, it becomes apparent that the court's opinion was intended to convey a different, indeed precisely opposite principle. Although agreeing with the result in *Schubtex,* three Judges of the Court of Appeals subscribed to a concurring opinion that was written to express a fundamental disagreement with the principle believed by the concurring Judges to have been set forth in the court's opinion. The principle attributed to the court's opinion by the concurring Judges, stated clearly, emphatically and repeatedly, is precisely the opposite of the principle thought by the dissenting opinion here to have been set forth in *Schubtex*. Indeed, the dissenting opinion attributes to the Court of Appeals a position that was strenuously supported by the concurring Judges, and which the concurring opinion acknowledged had been rejected in the court's opinion. The concurring opinion (per Gabrielli, J.) opened with the following sentence (p 7): "I concur in result, but am unable to join in the majority opinion because of the erroneous suggestion contained therein, in dicta, that a court may impose an agreement to arbitrate upon the parties to a contract, despite the absence of any express agreement, solely on the basis of past dealings or a trade custom". It went on to say (p 8): "The majority of this court had concluded that there must be a reversal because there is no evidence to support a finding either that the parties had entered into a consistent course of past dealings including the use of arbitration as their normal method of dispute resolution, or that arbitration is so prevalent in the textile industry as to constitute a trade usage. I agree that such evidence was lacking, but deem that largely irrelevant, since I strongly disagree with the majority's suggestion that the existence of an arbitration agreement could 'in a proper case be implied from a course of past conduct or the custom and practice in the industry' * * * despite the absence of an express agreement to arbitrate." The concurring opinion stated once again its interpretation of the majority view (p 9): "The conclusion reached by the courts below is premised upon the belief, apparently accepted by the majority of this court today, that an arbitration clause may be incorporated into a contract simply because arbitration may be the prevalent means of resolving disputes in an industry and has in fact been provided for by the parties in prior agreements, despite the absence of any express agreement to arbitrate disputes arising from the object contract." Finally, after stating (p 11) the rule in *Marlene* to be that an agreement to

arbitrate may be found to exist only when there is an " 'express, unequivocal agreement' " and " 'an explicit commitment' to submit disputes to the arbitral forum", the concurring opinion went on to define precisely the issue that divided the concurring judges and the court majority: "In light of this plain statement of policy, it makes little sense to now hold that the existence of such an agreement may be proven *solely* upon the basis of trade usage and prior dealings. Such evidence is used to incorporate into contracts certain provisions which the parties have failed to expressly include, but which the law assumes they would have included had they considered the matter. Where there exists good reason to require an explicit agreement, however, it would seem most imprudent to allow a presumption of intent to supplant the need for such an agreement." It is not easy to believe that the concurring Judges were so mistaken in their construction of the court's opinion as the dissenting opinion here necessarily assumes. It is even more difficult to accept that the *Schubtex* majority, confronted with a strongly worded disagreement, would not have disputed the accuracy of the interpretation advanced in the concurring opinion if it were in fact inaccurate. When the court's opinion in *Schubtex* is read as a whole, it is clear that the concurring opinion correctly stated its essential principle. Particularly significant are the last two sentences in the court's opinion quoted previously (p 6): "However, a determination that a written provision for arbitration has, in fact, been incorporated in the oral agreement of the parties in consequence of either trade usage or a prior course of dealings must be supported by evidence in the record. We conclude that there was no such evidence in this case." From the context it is apparent that the "evidence in the record" deemed necessary to support a determination that a written provision for arbitration has been incorporated in the oral agreement of the parties, was evidence of trade usage or a prior course of dealings, not evidence of an explicitly articulated agreement to arbitrate. Also significant is an earlier section of the court's opinion in which it stated (p 6) the *Marlene* rule to be that a party ought not to be forced into arbitration "absent evidence of an express intention to be so bound", and went on to amplify that principle as follows: "In other words, unless it can be shown that the parties contemplated the use of arbitration, they will not be held to have relinquished their right to litigate their disputes in the courts." From the foregoing, we conclude that the Court of Appeals in *Schubtex* set forth the following here-pertinent principles. An agreement to arbitrate, supplementing the express terms of a contract for the sale of goods, may be implied in a proper case from a course of past conduct or the custom and practice in the industry. An arbitration provision in a memorandum thereafter received by a party to the transaction would not, in contradistinction to the situations in *Marlene* and *Schubtex,* constitute a material alteration of the terms of the contract. A party who receives such a memorandum without communicating its objection within a reasonable period of time would be bound by the arbitration provision, that provision having been (p 6) "incorporated in the oral agreement of the parties in consequence of either trade usage or a prior course of dealings". (See Uniform Commercial Code, § 2-207.) The undisputed facts in the record make this a compelling case for applying this principle. The evidence is uncontested that it is the practice in the textile industry in New York City for broker-negotiated transactions to be followed by sales notes to both parties setting forth the terms of the transaction and including arbitration provisions. Two of the affidavits by independent textile brokers assert that "all" such sales notes include arbitration provisions. Woodcrest is a New York corporation engaged in the textile business, and with an office in New York City. It did not deny that the practice in the industry was as described in the affidavits submitted on behalf of B & R,

nor did it disclaim any knowledge of that practice. Nor did Woodcrest claim that it had not read the prominently printed arbitration provision on the face of the sales notes. Although not by itself sufficient to justify an inference of an agreement to arbitrate, the circumstance that there had been five previous transactions between the parties embodied in sales notes including an arbitration provision that had been retained without objection by Woodcrest provide additional support here for the inference of an agreement to arbitrate. In *Marlene*, the court's opinion opened (pp 329-330) with a reference to the "common business practice of blithely drafting, sending, receiving, and filing unread numerous purchase orders". This is emphatically not that case. That Woodcrest was fully aware of the arbitration provisions here is not in doubt. The Court of Appeals further commented in *Marlene* (p 334) that by agreeing to arbitrate a party waives many of his normal rights, and it would accordingly "be unfair to infer such a significant waiver on the basis of anything less than a clear indication of intent". This case presents another form of unfairness, indeed what might be considered a form of purposeful overreaching. Woodcrest entered into a number of textile transactions with B & R, knowing that B & R understood, and had a right to understand, that any dispute with regard to these transactions would be resolved by arbitration, and chose not to communicate its disagreement with that understanding, if it in fact had disagreed, until a dispute occurred. For the reasons set forth above we are persuaded that the sales notes received by Woodcrest with regard to each transaction, in the absence of any communication of objection to the arbitration provision within a reasonable time, constituted enforceable written agreements to arbitrate. Accordingly, the judgment of the Supreme Court, New York County (Wolin, J.), entered June 30, 1982, granting petitioner's application to stay arbitration should be reversed, on the law, and the petition should be dismissed.

Milonas, J. (dissenting). Appellant B & R Textile Corporation and respondent Woodcrest Fabrics, Inc. are both textile converters. Through its broker, appellant offered to sell certain textile fabrics to Woodcrest Fabrics, who agreed to the purchase. Appellant subsequently mailed respondent a sales note dated December 1, 1981, confirming the transaction. A second sale was followed by another note dated December 23, 1981. Although the goods were duly delivered and accepted, Woodcrest ultimately refused to make payment, claiming that the material was defective. Four prior transactions between these parties had been completed without difficulty earlier that year, and a fifth order had been canceled by mutual consent. On each occasion, including the two under contention here, appellant sent a sales note to respondent. The notes, which apparently did not have to be signed or returned, were retained by respondent. All of the notes were identical in form and contained an arbitration clause. When appellant demanded arbitration to resolve the conflict over the unpaid invoices, Woodcrest commenced a proceeding seeking to stay the arbitration. In granting the petition, Special Term held that unless it can be demonstrated that the parties manifestly intended to bind themselves to arbitration, they will not be deemed to have relinquished their right to litigate in the courts. I concur with the court's conclusion that no such agreement exists here. The law is clear that an arbitration provision printed on a written confirmation of an order constitutes a material alteration of that proposed purchase order. Therefore, absent evidence of an express intention by the parties to resort to arbitration, they will not be found to have obligated themselves thereto. (*Schubtex, Inc. v Allen Snyder, Inc.*, 49 NY2d 1; *Matter of Marlene Inds. Corp. [Carnac Textiles]*, 45 NY2d 327; *Raam Fabrics v Scott Corp.*, 88 AD2d 853.) In the instant matter, appellant asserts that the intent of the parties to employ arbitration is reflected by the previous dealings between

them, as well as the custom and usage in the industry. However, the subject of arbitration was never discussed between appellant's broker and Woodcrest. Respondent did not sign or return its sales notes, nor is there any proof that it had actual knowledge of the arbitration clause. The fact that it may be the practice of textile brokers to use sales notes which include an arbitration provision is hardly sufficient indication of a common industry-wide custom or usage such as would bind the buyer to arbitration, thereby foreclosing its right to legal redress in the courts. In *Schubtex, Inc. v Allen Snyder, Inc. (supra)*, and *Matter of Marlene Inds. Corp. (Carnac Textiles) (supra)*, the Court of Appeals, in cases involving precisely the same industry as the one at issue here, did not decide that the custom and practice was for the parties necessarily to arbitrate conflicts arising between them. This court reached a similar conclusion in *Raam Fabrics v Scott Corp. (supra)*, which also concerned the textile industry. In *Schubtex, Inc. v Allen Snyder, Inc. (supra,* at p 6), the Court of Appeals stated that: "Although evidence of a prior course of dealing is relevant in determining whether the parties have agreed to submit their dispute to arbitration and a determination that their oral agreement included a provision for arbitration could in a proper case be implied from a course of past conduct or the custom and practice in the industry, such a determination must be supported by evidence which affirmatively establishes that the parties expressly agreed to arbitrate their disputes. As the concurring members of the court concede, 'evidence of a trade usage or of a prior course of dealings may normally be utilized to supplement the express terms of a contract for the sale of goods' * * * We would note also that this doctrine has been held to be applicable to arbitration agreements." In that connection, the concurring opinion pointed out (p 9) that: "It is true, of course, that evidence of a trade usage or of a prior course of dealings may normally be utilized to supplement the express terms of a contract for the sale of goods (Uniform Commercial Code, § 2-202, subd [a]; see, also, § 1-205). General rules of contract law, however, are not always applicable to arbitration clauses because of overriding policy considerations. A purported agreement to arbitrate is severable from the other provisions of a contract (*Matter of Weinrott [Carp]*, 32 NY2d 190, 198), and it has long been true, if it were ever in doubt, that 'the threshold for clarity of agreement to arbitrate is greater than with respect to other contractual terms' ". The majority opinion herein relies predominantly on *Matter of Huxley* (294 NY 146, 150), for the proposition that where there is a broker on the scene, an acceptance of notes by both parties becomes a contract binding upon the buyer and the seller respectively "inasmuch as thereby each party admits that the broker was his agent in the transaction." Yet, it is difficult to perceive how a broker who is, as in the present situation, acting on behalf of the seller may bind the buyer to arbitration under circumstances in which, according to the Court of Appeals in *Schubtex, Inc. v Allen Snyder, Inc. (supra)*, the seller may not. Thus, if the seller submits to the buyer a sales note, or a series of sales notes, containing an arbitration provision, and the buyer retains the note or notes, the seller may not compel arbitration in the absence of a clear showing that this was the intention of the parties. But, on the other hand, under the scenario depicted in the majority opinion, if a broker enters the picture, then the outcome is different since the mere intervention of the broker has the power to confer validity on the arbitration clause. The major flaw in this line of reasoning is that it does not take into account the basic shift which has occurred in the law in the past 37 years since *Matter of Huxley (supra)*, was decided. In that case, the court was concerned almost exclusively with whether the documents delivered to the parties by the broker (bought and sold notes) constituted the actual contract of sale. Arbitration was, in effect, treated as

simply another clause in the agreement, indistinguishable from any other term therein and was mentioned only incidentally as being the provision in dispute. In the intervening years, the Court of Appeals has held that an arbitration provision of a contract is separable from the other clauses of the agreement. (*Matter of Weinrott [Carp]*, 32 NY2d 190.) Therefore, the emphasis now is on whether the parties did indeed intend to rely upon arbitration to settle any disagreements which might arise. In that regard, what is significant is not whether the sales note was prepared by the seller or the broker, but whether the buyer and the seller reached a meeting of the minds on the subject of arbitration. In *Raam Fabrics v Scott Corp., (supra)*, a case involving a transaction undertaken through the auspices of a broker, this court stated that "absent evidence of an express intention by the parties to resort to arbitration, they will not be deemed to have obligated themselves thereto." The fact that there was only one sale in *Raam,* whereas the instant matter concerns a series of sales, is not a relevant distinction. As the Court of Appeals asserted in *Schubtex, Inc. v Allen Snyder, Inc. (supra,* at pp 6-7), "inasmuch as the mere retention by the buyer of the form containing the arbitration clause failed to create such an agreement in the first instance, repeated use of the same ineffective form should not be held to have done so in subsequent transactions." Thus, it is not the number of transactions which is crucial but the question of whether the buyer did indeed contemplate that arbitration would be relied upon in the event of possible disputes between the parties. There is nothing in the record of this case to demonstrate that Woodcrest ever contracted itself to arbitrate its disputes with appellant. Respondent simply agreed to purchase certain material from B & R Textile and received a standard broker's sales note containing a provision for arbitration from the broker originally retained by the seller. Additional transactions ensued in the same manner. It cannot be inferred that Woodcrest obligated itself to arbitration because it did not cancel the order after arrival of the sales note or because it failed expressly to disavow the arbitration clause. Accordingly, Special Term appropriately granted the application to stay arbitration. Judgment of the Supreme Court, New York County (Wolin, J.), entered cn June 30, 1982, which granted petitioner's applications to stay arbitration, should be affirmed, without costs or disbursements.