Just In-Material Designs, Ltd., Respondent, v I.T.A.D. Associates, Inc., Appellant.

First Department, June 7, 1983

APPEARANCES OF COUNSEL

*Kenneth A. Schulman* of counsel (*Kreindler & Relkin, P. C.,* attorneys), for appellant.

*Jed R. Schlacter* of counsel (*Lauritano & Schlacter,* attorneys), for respondent.

OPINION OF THE COURT

Fein, J.

Defendant (I.T.A.D.) is an importer of greige (unfinished) textile fabrics. Plaintiff (Designs) is a textile converter which purchases unfinished goods and has them finished for resale. In late May or early June, 1981, Associated Textile Brokers Co. (Associated), a textile broker, negotiated a sale of piece goods by defendant to plaintiff. Each of the parties asserts the broker represented the other. On the face of the record it must be concluded that

the broker represented both. It is undisputed that neither party communicated directly with the other in negotiating the sale.

The dissent concludes that the broker only represented the defendant. This is contrary to the record. The moving affidavit of defendant's president states: "Specifically, on or about June 4, 1981, Designs [through its broker, Associated Textile Brokers Co. (Associated)] placed an order with ITAD for 20,000 yards of cotton/polyester voile textile fabric. Designs' purchase was pursuant to written contract No. S-4037 signed by Associated and transmitted to both ITAD and Designs." This is the sale note containing the arbitration clause. That this was the order of events is nowhere denied by plaintiff, not even in the portion of its president's affidavit, relied on by the dissent, which consists merely of legal argument by a nonlawyer that the face of the note requires the conclusion that the broker was defendant's agent. The fact that the sale note recites "Sold for account of" defendant does not make the broker the seller's agent. It further recites "[w]e confirm sale to" plaintiff. This combination of terms plainly imports the conclusion that the broker acted for both.

On June 4, 1981 the broker issued a sale note, designated "Contract No. S4037", to both parties. This "memorandum sale note", confirming a sale by defendant to plaintiff, provided space for the signature of the broker only. It bore the notation that it would be superseded by the seller's own contract. Prominently set forth in this note was a broad arbitration clause. Thereafter, a "corrected salenote" was issued, bearing the same date and contract number, altering only the schedule for delivery of a portion of the goods. In all other respects this note was identical to the one issued previously. Once again the broker acted for both parties, there being no direct communication between them. Only then did defendant forward a contract to plaintiff, bearing the same date and a reference by the same contract number to the sale note evidencing the negotiation by the broker, named in the contract, which also contained a broad arbitration clause. Although it had space for signatures by the parties, it was never signed by either party.

Thereafter, defendant commenced delivery of the goods, starting with sample material, in July, 1981, as required by the sale note, accompanied by invoices indicating delivery of over 192,000 yards of material between July, 1981 and January, 1982. Payments were made on some of these invoices, but when a dispute arose over quality of goods delivered, plaintiff brought this action for breach of warranty and fraudulent inducement, claiming compensatory damages of $240,000 on each of four counts, plus $500,000 in punitive damages. Defendant sought to stay this action and compel arbitration under the contract. Special Term denied defendant's motion on the ground that it did not appear that plaintiff had agreed to arbitration because plaintiff had neither signed the memoranda (the contract or either of the two sale notes), nor shown any evidence of its acceptance of the goods.

Special Term apparently ignored the undisputed fact that there had been a delivery and acceptance of a large sample and a substantial quantity of the goods contracted for. Moreover, Special Term apparently overlooked a letter on plaintiff's stationery, addressed to defendant on September 16, 1981, referring to the contract by number[*] and indicating that the October shipment of 25,000 yards would have to be rejected because of an apparent difficulty in meeting the projected delivery date. In addition to plaintiff's acceptance of the goods, this letter, the only writing on behalf of plaintiff in the record, constitutes an acknowledgment of the existence of the contract.

Defendant urges that the broker's sale note constitutes a contract in and of itself, and any doubts created by the subsequent unsigned formal contract were cleared up by plaintiff's letter of September 16, 1981 acknowledging the contract, including the arbitration clause. Plaintiff responds that there can be no compulsion to arbitrate absent a clear and unequivocal agreement to settle disputes in that manner.

Arbitration will be compelled only where there is a clear, unequivocal written agreement to arbitrate (*Matter of Marlene Inds. Corp. [Carnac Textiles]*, 45 NY2d 327; *Schubtex, Inc. v Allen Snyder, Inc.*, 49 NY2d 1). As these

---

\* One digit in the 13-character contract reference does not match the contract, an apparent typographical error.

and other cases hold, absent evidence of an express intention to resort to arbitration, no obligation to do so will be deemed to exist (*Raam Fabrics v Scott Corp.*, 88 AD2d 853). Hence, it is the obligation here, as in other cases, to determine whether such an agreement has been made, even though there does not exist an agreement signed by both parties.

It has long been settled that retention without objection for a reasonable period of time of sale notes executed by a broker authorized to act for both parties establishes an agreement to arbitrate where the sale note contains an arbitration provision (*Matter of Huxley* [*Reiss & Bernhard*], 294 NY 146; *Matter of J. K. Knitting Mills* [*Dorgin*], 273 App Div 591; *Matter of Catz Amer. Sales Corp.* [*Holleb & Co.*], 272 App Div 689, affd 298 NY 504). In *Huxley* (*supra*) the sale of goods was negotiated by a corporate merchandise broker employed for the purpose by the seller who supplied to the parties what the Court of Appeals described as "bought and sold notes" of a kind in which "the broker professes to act for both parties whose names are disclosed in the notes. An acceptance by the parties of bought and sold notes of that type makes a contract in the terms thereof, inasmuch as thereby each party admits that the broker was his agent in the transaction" (294 NY, at p 150).

The bought and sold note here is not dissimilar from that described in *Huxley* (*supra*). Moreover, in *Huxley* although the seller employed the broker, the court held under the circumstances the broker was acting for both parties. Here it is plain that the broker acted for both parties. The only communication between the parties was through the broker except that after the receipt of the sale note by each of the parties containing the arbitration provision with a contract number, there was a similar corrected sale note, and after the seller forwarded a contract containing the same number and arbitration clause, the buyer wrote to the seller, identifying the transaction by the same contract number and referring clearly to the merchandise involved. The buyer retained both the sale note and the contract form without objection. As *Huxley* establishes, there is no reason why a broker, who acts for both parties, cannot

make a contract binding on both, including the terms of the sale and an arbitration provision. And so this court held in *Matter of J. K. Knitting Mills (Dorgin)* (273 App Div, at pp 592-593): "It is well established that binding contracts of sale of personal property may be made by means of brokers' bought and sold notes (*Matter of Huxley,* 294 N. Y. 146; *Newberry* v. *Wall,* 84 N. Y. 576; *Childs* v. *Riley Co.,* 186 App. Div. 775). Where such notes are signed by the broker and sent to both parties to the transaction, the act of the broker in doing so is what makes the contract, subject, of course, to the proviso that the broker has been authorized by both the buyer and the seller to cement that particular agreement between them. It has been contended that if the broker's authority coincided at all points with the contents of the memoranda, it would be too late for either buyer or seller to alter the bargain after the issuance of the bought and sold notes. Since a broker's authority is usually oral, however, and the circumstance that he represents both sides may under certain conditions make his acts voidable, especial and usually controlling importance attaches, in the practical conduct of commercial transactions, to whether the buyer and seller retain the broker's memoranda without objection for a reasonable period of time. Ratification is there equivalent to prior authorization (*Hoppe* v. *Russo-Asiatic Bank,* 200 App. Div. 460, affd. 235 N. Y. 37). Failure to object promptly thus furnishes a useful, objective test of whether the broker was authorized to make the deal expressed in the memoranda."

To the same effect is *Matter of Catz Amer. Sales Corp. (Holleb & Co.) (supra).* Here the subsequent writings between the parties did not annul the contractual relationship between them or alter its terms. So binding was the broker's note that it was unaffected by the later unsigned contract which was not inconsistent with the contents of the sale note (*Matter of Huxley [Reiss & Bernhard], supra*).

Nothing in *Matter of Marlene Inds. (supra)* or *Schubtex (supra)* is to the contrary. Neither case involved a transaction negotiated through a broker and embodied in sale notes prepared and executed by a broker acting on behalf of both parties. *Marlene Inds. (supra)* involved a "battle of the forms". It was plain in *Marlene Inds.* that the parties had

entered into an oral agreement for the sale and purchase of goods without providing for arbitration. Marlene Industries then sent Carnac a "purchase order" not providing for arbitration. Carnac countered with "an acknowledgement of order" containing an arbitration clause. This was held to be a material alteration which did not become part of the contract (Uniform Commercial Code, § 2-207, subd [2]), in the absence of proof it had been agreed upon. In *Schubtex* (*supra*) once again the orders were taken orally at the purchaser's place of business, with no discussion of arbitration. Seller then sent purchaser by mail a printed confirmation of order form containing the arbitration provision in dispute. The retention of that form was held not to accomplish a modification of the admitted oral agreement so as to incorporate a binding arbitration obligation.

Neither case deals with a broker's sale note. There is no reference in either case to a sale note and its significance. Nor does either case refer to *Huxley* (*supra*) and the other authorities cited dealing with broker's sale notes where the broker acts for both parties. *Raam Fabrics* (*supra*), although superficially similar, is not controlling. In *Raam Fabrics,* as this court stated, the broker represented the seller in bringing about an oral agreement for the sale and purchase of the goods without reference to arbitration. Only then did the broker issue a sale note containing an arbitration clause. The alleged cancellation of the agreement occurred on the same day the order was placed, so that there was no retention of the writing demonstrating an acceptance or ratification of its terms. Nor was there a delivery and acceptance of goods.

*Woodcrest Fabrics v B & R Textile Corp.* (95 AD2d 656), released by this court simultaneously herewith, is in accord as to the binding effect of a sale note containing an arbitration clause, although it is clear from both the majority and minority opinions that the broker acted solely on behalf of the seller. Here, as in the cited authority, the broker acted on behalf of both parties in executing and forwarding the sale note. The authorities are in accord that a broker acting for both parties may bind them to an arbitration provision as well as other terms of the agreement.

It cannot be challenged, as asserted by the dissent, that "[t]he power of the agent results from the manifestation of the principal's consent, and extends no further than such manifestation" (*Wen Kroy Realty Co. v Public Nat. Bank & Trust Co. of N. Y.,* 260 NY 84, 89). Here plaintiff acted only through the broker, as did the defendant. If there was a contract, and it is undisputed that there was one, it was negotiated by the broker on behalf of both parties and its terms set forth in the sale note, unlike *Schubtex* (*supra*) where there was a binding oral contract at the outset. If the broker had power to negotiate price, quantity and time of delivery, he had like power as to arbitration. The retention of the sale note for a reasonable time, and the receipt and acceptance of the goods, evidence the nature of the contract and ratification of its terms, including arbitration.

The dissent concludes that defendant's own unsigned contract superseded the sale notes and "eliminated [them] from this matter", and thus somehow avoids the obligation to arbitrate. This proves too much. If defendant's contract is the contract between the parties, it must be acknowledged that it contains an arbitration clause. Thus the only evidence of the contract, the sale notes and defendant's form contract, contain an arbitration clause. There is no evidence of any agreement between the parties which does not provide for arbitration. There was an " 'express, unequivocal agreement' " to arbitrate (*Matter of Marlene Inds. Corp. [Carnac Textiles]*, 45 NY2d 327, 333, *supra*).

The distinction between such a case as ours, involving a broker acting for both parties, and one where the parties' writings demonstrate a clear difference in intention with regard to such a material element as an agreement to arbitrate, is well illustrated in *Matter of Albrecht Chem. Co. (Anderson Trading Corp.)* (298 NY 437).

The order of Supreme Court, New York County (GOMEZ, J.), entered June 9, 1982, denying defendant's motion to stay this action and compel arbitration and granting plaintiff's cross motion to stay arbitration, should be reversed on the law, defendant's motion should be granted and plaintiff's cross motion should be denied, with costs.

Ross, J. (dissenting). The majority overlooks a number of critical facts, and makes certain assumptions with which we cannot agree.

Concededly, Associated Textile Brokers Co. (Associated) issued a sale note, and corrected sale note, to the parties, each of which contained an arbitration clause. It is undisputed that plaintiff did not sign either note, and that plaintiff did not discuss arbitration with Associated.

The cornerstone of the majority's opinion is the conclusion that Associated acted as broker for both parties. We cannot agree. This conclusion is unsupported by the evidence, which shows that Associated only represented defendant.

Examination of the record reveals that:

1. both notes state that Associated "Sold for account of" defendant;

2. the president of plaintiff denied, in an affidavit, that Associated was plaintiff's broker, and this sworn statement, even though denied by defendant, was not rebutted by an affidavit of Associated (who would purport to be its agent), as one would expect it to be if it was not the fact;

3. there is no "pattern of past conduct * * * [that establishes a custom, that the broker represented both parties, that indicates] an implied agreement to arbitrate" (*Raam Fabrics v Scott Corp.,* 88 AD2d 853). It is undisputed that this is the first time that the parties did business together and they conducted their businesses in different areas of the textile trade.

It is hornbook law that "[t]he power of the agent results from the manifestation of the principal's consent, and extends no further than such manifestation" (*Wen Kroy Realty Co. v Public Nat. Bank & Trust Co. of N. Y.,* 260 NY 84, 89). Herein, we find that plaintiff never manifested an intent to have Associated act as its agent or broker. Absent such a finding, Associated's acts cannot bind plaintiff to arbitrate.

The cases cited by the majority that deal with the effect of the retention for a reasonable time, without objection, of a broker's sale note which contains an arbitration clause,

are not applicable. The sale note and corrected sale note were almost immediately superseded by the defendant's own contract, which bears the same date as the two notes. Once the defendant issued its contract, these notes were eliminated from this matter. The face of each one of the notes had stamped upon it this legend: "THIS IS A MEMO-RANDUM SALE NOTE, AND WILL BE SUPERSEDED BY SELLER'S OWN CONTRACT". When the majority concludes "so binding was the broker's note that it was unaffected by the later unsigned contract", they disregard the plain meaning of the word "superseded", that appeared on the sale notes.

As mentioned by the majority, the plaintiff never signed the contract. The defendant's contract contained an arbitration clause. However, the majority do not contend that the retention by plaintiff of this unsigned contract alone makes out an agreement to arbitrate. There is no evidence that the parties ever discussed the subject of arbitration with each other. "[T]he mere retention by the buyer of the form containing the arbitration clause failed to create such an agreement" (*Schubtex, Inc. v Allen Snyder, Inc.*, 49 NY2d 1, 6).

Soon after defendant began to ship goods, plaintiff complained by letter, dated September 16, 1981, about late delivery. The majority identified this letter, and we agree, as an acknowledgment by plaintiff that a contract existed between the parties. Plaintiff has never denied that. Nevertheless, acknowledging the existence of a contract does not concede an agreement to arbitrate disputes. This letter makes no mention of arbitration.

The Court of Appeals stated in *Matter of Marlene Inds. Corp. (Carnac Textiles)* (45 NY2d 327, 333): "It has long been the rule in this State that the parties to a commercial transaction 'will not be held to have chosen arbitration as the forum for the resolution of their disputes in the absence of an express, unequivocal agreement to that effect; absent such an explicit commitment neither party may be compelled to arbitrate'".

Our review of the facts compels us to find that plaintiff did not expressly and unequivocally agree to arbitrate its dispute with defendant.

Accordingly, we would affirm Special Term.

SULLIVAN, J. P., and CARRO, J., concur with FEIN, J.; Ross and LYNCH, JJ., dissent in an opinion by Ross, J.

Order, Supreme Court, New York County, entered on June 9, 1982, reversed, on the law, defendant's motion granted and plaintiff's cross motion denied. Appellant shall recover of respondent $50 costs and disbursements of this appeal.