■ In the Matter of the Arbitration between MOSTEK CORPORATION, Respondent, and NORTH AMERICAN FOREIGN TRADING CORPORATION, Appellant.—Order, Supreme Court, New York

County (Evans, J.), entered January 24, 1985, following a nonjury trial which (1) adjudged that no valid agreement to arbitrate had been made, and (2) granted petitioner's application permanently to stay arbitration, unanimously reversed, on the law, the application to stay arbitration is denied and the parties are directed to proceed with arbitration, without costs.

The petitioner, Mostek Corporation, is a Texas corporation which manufactures, distributes, and sells integrated circuits or microchips and other computer-related equipment. The respondent, North American Foreign Trading Corp. (NAFTC), is a New York corporation which assembles consumer electronic products in the Far East and imports the finished goods into the United States for sale. In early 1983, Maurice Lowinger, the president of NAFTC, contacted Mostek about the purchase of microchips. He was referred to Mostek's regional office in Connecticut, of which Bruce Bradford was then regional manager. The parties attempted to transact business a month prior to the sale at issue, but the shipment was never made for reasons which are unclear. The buyer utilized the same purchase order form with the same arbitration clause. In the first discussion of the subject transaction, Bradford indicated that Mostek must be given a purchase order number. NAFTC then issued purchase order No. 42083 for the sale of microchips, for use in manufacturing telephones, to NAFTC for export to NAFTC's designee in the Far East. By a series of telephone calls and telexes, Lowinger and Bradford thereafter negotiated the purchase of 365,000 chips at a price of 90 cents per chip, to be shipped on a delivery schedule whereunder time was of the essence. Bradford also insisted upon receipt of payment in full by irrevocable letter of credit before the first shipping date, April 29th. On April 22nd, NAFTC, through the Chase Manhattan Bank, opened an appropriate letter of credit in favor of petitioner's bank, the Republic National Bank of Dallas.

On April 27th, Bradford and Dennis Case, a marketing manager from Mostek's Texas headquarters, came to NAFTC's midtown Manhattan office to meet Lowinger and to draft purchase order No. 42083. The meeting lasted about two hours. After verifying that the terms were agreed on, Lowinger dictated the terms of the import order in Bradford's presence. The front of the order form stated that the order was placed under certain conditions which were set forth on the reverse side of the form. Among the conditions on the reverse side of the order is an arbitration clause, with no

separate heading and separated by spacing from the preceding section entitled "ORDER NUMBERS", as follows:

### "ORDER NUMBERS

"Our order number must appear in all correspondence, invoices and shipping documents.

"Any dispute arising out of this order shall be submitted to arbitration as provided in the terms set forth on the back of this order. No variation of any of the terms of this order may be made without the written approval of North American Foreign Trading Corporation. The delivery of merchandise pursuent [sic] to this order shall be deemed as acceptance by the seller of the terms of this order unless variation of said terms has been consented to in writing."

It is uncontroverted that the arbitration provision had never been expressly discussed by the parties. In his testimony at trial Lowinger indicated that, upon his request, Bradford had read the terms on both sides of the printed order form before he signed it. Bradford disputed this, and testified that "[t]he rest of it just didn't have much meaning in our business, so I didn't pay a lot of attention to the rest of it."

Mostek subsequently discovered that its inventory was insufficient to fulfill the order. On April 29, 1983, Michael Allums, the manager of petitioner's Marketing Services Division, advised Lowinger that, due to stock shortage, petitioner could not execute the order, and that Bradford was not empowered to bind Mostek to customer purchase orders since the sales order had to be confirmed by headquarters. In order to alleviate NAFTC's difficulties, and purportedly pursuant to an "oral" purchase order, Mostek subsequently made the first two shipments contemplated by the April 27th order. When Mostek refused to make the final shipment of 200,000 microchips called for under the April 27th order, NAFTC invoked the arbitration clause. Mostek then brought this application to stay arbitration.

Special Term (Saks, J.) granted Mostek's application to stay arbitration pending a preliminary trial on the question of the validity of the contract. After a trial, Justice Martin Evans held that "[t]he agreement, if there was one, was obtained through inveiglement and subtlety, and neither Mr. Bradford, nor his employer were aware of the arbitration clause", citing *Schubtex, Inc. v Allen Snyder, Inc.* (49 NY2d 1 [1979]). Since the court found no "meeting of the minds" with respect to

arbitration, it declined to reach the issue of whether Bradford had actual or apparent authority to sign a legally binding contract on behalf of Mostek.

The Federal Arbitration Act (Act), 9 USC §§ 1-14, governs this controversy because the sale of goods here by a Texas corporation to a New York corporation constitutes a transaction in interstate commerce. Section 2 of the Act provides, in pertinent part, that: "[a] written provision in * * * a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof * * * shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." Section 1 of the Act defines commerce to mean "commerce among the several States or with foreign nations". Since the Act covers this dispute, Federal law applies to all questions of interpretation, construction, validity, revocability and enforceability. (Coenen v Pressprich & Co., 453 F2d 1209, 1211 [2d Cir 1972]; see also, Matter of Rederi [Dow Chem. Co.], 25 NY2d 576, 582 [1970].) In considering Mostek's defense to the enforcement of the arbitration clause set forth in the purchase order, we must be guided by a "healthy regard for the federal policy favoring arbitration." (Cone Hosp. v Mercury Constr. Corp., 460 US 1, 24 [1983].) We find that a valid arbitration agreement was made and that no grounds exist for revocation.

Trial Term ignored the fact that the purchase order is the only writing signed by both parties which confirms the terms of the sale at issue. The court focused, instead, upon whether the parties discussed and expressly assented to an arbitration provision. Schubtex, Inc. v Allen Snyder, Inc. (supra) is not controlling because the present case does not involve printed forms which crossed paths without meeting. Here the contract was signed by each of the parties in the presence of the other. Although there is dicta in Schubtex and other cases to support Trial Term's reasoning and conclusion, such an interpretation is inconsistent with, and preempted by, Federal law to the extent that it imposes heightened judicial scrutiny of the circumstances surrounding the inclusion of an arbitration provision in a form contract. In Southland Corp. v Keating (465 US 1, 11 [1984]), the United States Supreme Court summarily enforced the arbitration clause in a standard, printed contract. (See also, Dean Witter Reynolds v Byrd, 470 US 213, 217 [1985].)

As this court stated in *Just In-Material Designs v I.T.A.D. Assoc.* (94 AD2d 103, 109 [1st Dept 1983], *affd* 61 NY2d 882 [1984]): "If defendant's contract is the contract between the parties, it must be acknowledged that it contains an arbitration clause. Thus the only evidence of the contract, the sale notes and defendant's form contract, contain an arbitration clause. There is no evidence of any agreement between the parties which does not provide for arbitration. There was an ' "express, unequivocal agreement" ' to arbitrate *(Matter of Marlene Inds. Corp. [Carnac Textiles],* 45 NY2d 327, 333, *supra).*

We disagree with Special Term's finding that NAFTC fraudulently obtained agreement to the arbitration provision. We find no compelling considerations of inequitable conduct or unequal bargaining power which would justify revocation of the contract. The buyer and seller are sophisticated corporate entities. *(See, Mitsubishi Motors Corp. v Soler Chrysler-Plymouth,* 473 US 614, —, 105 S Ct 3346, 3354 [1985].)

On the basis of the evidence at trial, we conclude that the purchase order and the arbitration provision therein were within the scope of Bradford's actual or apparent authority. (2 NY Jur 2d, Agency, §§ 94, 97, at 541-544; *Masuda v Kawasaki Dockyard Co.,* 328 F2d 662, 665 [2d Cir 1964]; *Tel-Ads, Inc. v Trans-Lux Playhouse,* 232 F Supp 198 [US Dist Ct DC 1964]; *accord, Greene v Hellman,* 51 NY2d 197, 204 [1980].) As discussed, *supra,* since the Arbitration Act governs this dispute, Federal law applies to the issue of revocability. *(Coenen v Pressprich & Co., supra.)* Absent bad faith or actual communication from Mostek concerning limitations upon Bradford's authority, Mostek should bear responsibility for his actions. (Restatement [Second] of Agency § 161.) The testimony by Bradford and Mostek's marketing manager concerning customary use of a sales order confirmation procedure in the electronics industry is irrelevant where, as here, the intention of the parties can be gathered from the four corners of the signed agreement itself. *(Bethlehem Steel Co. v Turner Constr. Co.,* 2 NY2d 456, 460 [1957].) Concur—Murphy, P. J., Asch, Kassal, Rosenberger and Ellerin, JJ.