[660 NYS2d 402]

Rebecca Ledwith et al., Respondents, v Sears, Roebuck and Company, Inc., Appellant.

First Department, July 3, 1997

## APPEARANCES OF COUNSEL

*Michael Conforti* of counsel *(Leahey & Johnson, P. C.,* attorneys), for appellant.

*Sandra D. Janin* of counsel *(Gary B. Pillersdorf & Assoc., P. C.,* attorneys), for respondents.

### OPINION OF THE COURT

SULLIVAN, J.

On December 5, 1987, plaintiff Rebecca Ledwith, living at the time with plaintiff Brian Margolin in Oregon, where they both were attending community college, was burned when, while attempting to light a gas lantern, concededly over 10 years old, the lantern exploded, injuring both Ledwith and Margolin. The couple had allegedly purchased the lantern, manufactured by defendant, Sears, Roebuck and Company, Inc., secondhand, at a Manhattan pawn shop. Alleging in their complaint that they both were residents of New York County, living at 245 East 24th Street, plaintiffs commenced this action to recover for those injuries. They pleaded causes of action in negligence, strict products liability, failure to warn and breach of warranty.

After joinder of issue, defendant, asserting, *inter alia*, that Oregon, where the accident occurred and where most of Ledwith's medical treatment took place, rather than New York,

was the proper forum, moved, pursuant to CPLR 327, to dismiss the complaint on the ground of forum non conveniens. In opposing the motion, plaintiffs alleged, for the first time, the existence of a common-law marriage, arguing that a forum non conveniens dismissal would deprive them of an available alternative forum since, under Oregon law, their action would be time barred. Arguing that New York's borrowing statute (CPLR 202) did not apply because they both were New York residents, plaintiffs also cross-moved to strike a number of defendant's affirmative defenses alleging, essentially, that the action was time barred and that Oregon law applied. Defendant then cross-moved for summary judgment on the ground that the action was barred by Oregon's Statute of Limitations as applied by New York's borrowing statute.

Describing the issue as critical to the determination of the motions, the IAS Court ordered a hearing to determine plaintiffs' residence at the time the cause of action accrued. After four days of taking testimony and the denial of defendant's motion to reopen the hearing to admit in evidence additional documents showing that Ledwith was, at the time, an Oregon resident, the court denied defendant's motion to dismiss on forum non conveniens grounds, an issue that defendant has abandoned on appeal, denied its cross motion for summary judgment and granted plaintiffs' cross motion to strike the second, third, fourth, tenth and eleventh affirmative defenses. The court found, based on his residency in New York before leaving for college in Colorado and his periodic return to his father's apartment in New York, that Margolin was a New York resident and that, while Ledwith was not, Margolin's New York residency should be "imputed" to her because, prior to the accident, plaintiffs had, according to the court, entered into a common-law marriage during an extended stay in Colorado. The court also found that New York's substantive law, not Oregon's, would apply.

In reaching its factual findings, especially regarding the common-law marriage,[1] the hearing court, based on their "demeanor, inflections, body language, the likelihood of the facts to which they testified and the way those facts related to each other, and other facts in the case, and all the other traditional indicia", credited the testimony of plaintiffs.

Specifically, the court credited the testimony of the plaintiffs that they met at a "reggae" concert in New York City in the

---

1. The hearing court also uses the term "non-ceremonial marriage."

summer of 1985,[2] whereupon Ledwith immediately moved in with Margolin into his father's apartment. In the fall, Margolin went to Colorado and became a "ski bum", while Ledwith returned to Florida to attend to her sick mother, until plaintiffs were reunited in New York in June 1986.[3] It was at this time, the court found, that plaintiffs allegedly professed their love for each other and considered themselves married, and so represented themselves to others.

The court found that during the fall of 1986 through the summer of 1987, plaintiffs used the New York apartment as the base for their travels, which, in the main, consisted of following the rock band, "Grateful Dead", to its various performances. They then found temporary jobs in Colorado,[4] managing, at the same time, to make a few sidetrips to other States to attend "Grateful Dead" concerts. While in Colorado, the court found, Margolin, as a symbolic gesture with respect to their relationship, gave Ledwith a silver ring with an opal on it, which she wore on the third finger of her left hand. They introduced themselves as husband and wife to everyone, including "Greg Sidoe and Bob". The two then visited Eugene, Oregon, where they obtained applications to Lane Community College, and finally returned to New York. On the community college applications, both Margolin and Ledwith, concededly, falsely stated that they had lived in Oregon for 11 months in order to qualify for in-State tuition.

Plaintiffs enrolled in school in Oregon in September 1987, and remained there until December 5, 1987, when they were injured in the accident involving the gas lantern. The court found that in the Oregon hospital, where Ledwith was treated, plaintiffs represented themselves as husband and wife and were so referred to by the staff. Margolin made all the medical decisions.

■ We reject the notion of imputed residency, a theory for which the hearing court provided neither precedential support

---

2. Even this is contradicted by Ledwith's February 1993 deposition testimony in an unrelated Oregon action arising out of an automobile accident, in which she claims to have met Margolin in Colorado, not New York, in 1986, not 1985. The hearing court refused to reopen the hearing to consider this document.

3. Plaintiffs had also spent the 1985 Christmas vacation together in New York.

4. Even the hearing court was forced to concede that plaintiffs' testimony on when they arrived in Colorado and how long they stayed was "somewhat confused"; indeed their accounts and prior written statements ranged from three to seven months. In Ledwith's 1993 deposition in the unrelated Oregon action, she stated that they lived in Colorado for about one year.

nor legal analysis. Since, without the benefit of the imputed residency fiction, Ledwith's claim would be governed by the New York borrowing statute (CPLR 202), which would bar her under Oregon's statutory limitation from bringing this action, the motion to strike the third, tenth and eleventh affirmative defenses should have been denied as to her and the complaint on her behalf dismissed. Moreover, since, in arriving at its findings, the hearing court ignored, without explanation, a plethora of glaring inconsistencies in plaintiffs' testimony, as well as contradictory documentary evidence, on the issue of residence and the alleged common-law marriage, the determination that there was a common-law marriage cannot, in any event, stand. In addition, it was an abuse of discretion, as a matter of law, to deny reopening of the hearing for consideration of defendant's documentary evidence, i.e., the Oregon hospital notations by medical personnel, Ledwith's job application in Colorado and her deposition in an unrelated Oregon action, all bearing on the issue of Ledwith's residence and marital status. In that connection, we note that Ledwith's deposition in the unrelated Oregon action was not given until after both sides had rested and the hearing record was closed. Thus, the deposition evidence could not have been offered in the course of the hearing. Accordingly, we modify to dismiss the complaint as to Ledwith.

■■ On the residence question, we agree with the hearing court that Margolin, as a student, did not abandon his New York residence. (*See, Matter of Seitelman v Lavine*, 36 NY2d 165, 171.) In imputing Margolin's New York residence to Ledwith, who, according to the hearing court's finding, was his common-law wife, however, the hearing court ruled contrary to the established policy of this State, which recognizes the legal emancipation of women. (*See, generally, Millington v Southeastern El. Co.*, 22 NY2d 498; General Obligations Law §§ 3-311, 3-313.) The imputation of residency based upon the presumption, if, indeed, such a presumption ever existed (*but see, Page v Page*, 19 Misc 2d 291, 292, *mod* 4 AD2d 1030), that a married woman's residency is that of her husband is based on the anachronistic fiction that a married woman is merely an appendage of her husband. (*See, People v Liberta*, 64 NY2d 152, 164, *cert denied* 471 US 1020.) It should be noted that even under *Page* (4 AD2d 1030, *supra)* the presumption was considered rebuttable. Societal mores and the law recognize the full equality of women, married or unmarried. (*See, e.g., Millington v Southeastern El. Co., supra*, 22 NY2d, at 501.)

Under CPLR 202, New York borrows the *lex loci* period of limitations if it is shorter than the New York limitations period, "except * * * where the cause of action accrued in favor of a resident of the state." Thus, the Legislature has linked residency to the identity of the person in whose favor the cause of action accrues. Ledwith's separate and distinct cause of action for personal injuries did not "accrue[ ] in favor of" Margolin; nor did his cause of action accrue in favor of her. Thus, each injured party's right to avail himself or herself of the beneficial aspect of CPLR 202 based on a New York residency is judged on its own, without reference to status, association or the existence of a marital relationship. Plaintiffs' reliance in connection with this issue on out-of-State cases that address the question of domicile of a spouse are unavailing. Residence, not domicile, is the determinative factor.

In this regard, the courts, in applying CPLR 202, have had no difficulty in distinguishing the various rights of different family members. In *Rescildo v R.H. Macy's* (187 AD2d 112), for example, this Court dismissed, as untimely, a father's individual claims while sustaining his infant son's, since the infant was entitled to invoke the toll of infancy while the father was not.

Notwithstanding its imputation of Margolin's New York residency to Ledwith so as to afford her the beneficial effects of CPLR 202, the hearing court concluded that, irrespective of residence, they were both domiciled in New York. In so doing, and after an extensive choice of law analysis, the court concluded that Oregon's statute of repose (Ore Rev Stat § 30.905 [1]), which, insofar as relevant, bars any action based on product liability for personal injuries or wrongful death not commenced within "eight years after the date on which the product was first purchased for use or consumption", was a substantive law provision, rather than a procedural Statute of Limitations, and therefore, under New York choice of law principles, had no application to this lawsuit. Under this analysis, whatever infirmity might inhere in the imputation of Margolin's New York residency to Ledwith would be rendered harmless by virtue of the determination that, under New York choice of law principles, a New York court should apply the substantive law of New York and not Oregon's.

█ The hearing court's determination on this point was wrong for several reasons. Irrespective of whether the Oregon statute (Ore Rev Stat § 30.905 [1]) is considered procedural or substantive, it applies. By its own terms, CPLR 202's borrow-

ing provision is not confined to the Statute of Limitations but embraces all the laws that serve to limit the time within which an action may be brought. As respected commentators have observed, "[M]odern choice-of-law decisions are simply inapplicable to the question of statutory construction presented by CPLR 202" (1 Weinstein-Korn-Miller, NY Civ Prac ¶ 202.04). Consistent with that rationale, courts have refused to apply *renvoi,* the choice of law principle relied upon by the hearing court, to circumvent CPLR 202. (*Rescildo v R.H. Macy's*, 187 AD2d 112, *supra; Fitzgerald v Thompson*, 187 AD2d 557.) Were the rule otherwise, courts could choose, where favorable, New York's Statute of Limitations over the shorter limitation period of the *lex loci*, whereas CPLR 202 mandates application of the shorter of the two. CPLR 202 is to be applied as written, without recourse to a conflict of law analysis. We note that Oregon's Supreme Court has specifically held that the State's statute of repose provides " 'an overall maximum upper limit on the time within which a tort action could be brought' " and that the Legislature intended the statutes of repose to "supplement" the applicable Statute of Limitations. (*DeLay v Marathon LeTourneau Sales & Serv. Co.*, 291 Ore 310, 315, 630 P2d 836, 839, quoting *Josephs v Burns*, 260 Ore 493, 498, 491 P2d 203, 205.)

The Federal courts have specifically held that a statute of repose would be applied under CPLR 202. In *Barnett v Johnson* (839 F Supp 236 [SD NY]), the plaintiff argued that because the running of a statute of repose prevents a cause of action from arising and the period of repose had run, her action never accrued in Texas. Thus, she reasoned, because CPLR 202 requires the court to borrow the limitations period of the place where the action "accrued", there is no need to borrow the Texas period since the action never "accrued" in Texas. The court held (at 239) that "plaintiff's interpretation of 'accrued' in CPLR § 202 would erode, and perhaps undermine, the statute's purpose, as a New York court never could borrow a foreign state's statute of limitations when that state's corresponding statute of repose bars the cause of action, a result contrary to the intent of CPLR § 202."

◼ Finally, we reject the hearing court's resort to the Court of Appeals recognition, in interpreting the New York City Rent and Eviction Regulations (9 NYCRR 2204.6 [d]), of a family as "those who reside in households having all of the normal familial characteristics" (*Braschi v Stahl Assocs. Co.*, 74 NY2d 201, 211) in order to impute Margolin's New York residency to Ledwith.

■ With respect to the finding of a common-law marriage, plaintiffs' proof is so riddled with inconsistencies and contradictions that the finding cannot stand. (*See, Mohen v Mooney*, 205 AD2d 670, 672; *see also, Matter of Tyeasia C.*, 227 AD2d 165, *lv dismissed* 88 NY2d 1017.) For example, plaintiffs do not allege in their complaint that they were husband and wife; nor is any claim for loss of consortium asserted. The first mention of a common-law marriage was in February 1990, in response to defendant's motion to dismiss on the basis of forum non conveniens. In their supporting affidavits, both Margolin and Ledwith asserted that they resided in New York as common-law husband and wife from 1985 to 1987, when they moved to Oregon.[5] Putting aside the omission of any reference to their travels to Colorado, the purported situs of their common-law marriage, the claim that they had been married since 1985 is at odds with their hearing testimony, in December 1991, that they did not consider themselves husband and wife until the summer of 1986. Even more glaring, yet absent from the hearing court's decision, is the affirmation of plaintiffs' attorney dated June 18, 1990 (four months after plaintiffs' affidavits and a similar affirmation of counsel): "[P]lease forgive plaintiff's *[sic]* counsel for using the term 'common law marriage' with respect to the relationship between the plaintiffs. Plaintiffs' counsel is well aware that New York does not recognize common law marriages. However, for several years prior to the time the cause of action arose, and [at] said time, *plaintiffs were living together with the intent of formally marrying in the future*" (emphasis added).

As to the testimony that plaintiffs held themselves out publicly as married, and that everyone considered them to be husband and wife, it is less than persuasive and contradicted by the documentary evidence. The only names of the "lots of friends" Margolin could recall telling he was married were "Greg Sidoe," the spelling of which he was not sure, and "Bob," whose last name Margolin did not even know. Although the hearing court credited Margolin's testimony that he received and continues to receive mail addressed to plaintiffs as a mar-

---

5. In the very same affidavit, Margolin professes the belief that he "will be formally married" to Ledwith after graduating from college. He told his father, however, that he and Ledwith "feel we are married and we don't see the point going through a ceremony to make it better in your eyes or the State's eyes."

ried couple, Margolin was unable to produce any such letters, and, indeed, claimed that he had used them to kindle fires.[6]

Although Margolin's father testified at the hearing that he introduced Ledwith as his daughter-in-law, he had previously testified at a deposition that plaintiffs first informed him of their common-law marriage in March 1991, almost four years after the accident. Again, the hearing court merely, without elaboration, acknowledged that fact in a footnote.

In her application for Social Security disability benefits, filled out in the Oregon hospital to which she was admitted following the accident, Ledwith lists herself as never having been married, despite the boxes to indicate whether the marriage was performed by "[c]lergyman or public official" or "[o]ther (Explain in Remarks)". Discussing the issue in a footnote, the hearing court credited Ledwith's testimony that the social worker had prepared the form and Ledwith signed it, notwithstanding the inaccuracy, because she was distraught and the social worker told her she could only receive benefits if single. The court omitted Ledwith's third excuse, that the social worker told her that a common-law marriage was not valid.

Even if such testimony were to be credited, it is contrary to the testimony of plaintiffs and Ledwith's mother that the entire staff of the Oregon hospital referred to plaintiffs as husband and wife, and that Margolin made all the decisions. The testimony regarding the hospital staff is further undercut by a document, submitted before a decision was rendered, but which the hearing court refused to consider, containing hospital progress notations by at least five different medical personnel, in which Margolin is only referred to as Ledwith's "friend" or "boyfriend" or the "person who lives with" Ledwith; nowhere in those documents is Margolin referred to as "husband," "mate," "partner," or some similar term. One "inpatient admit record" lists Ledwith's mother as the emergency contact person; a subsequent one that lists Margolin as the contact describes his relationship with Ledwith as "friend".

Of similar significance, which the hearing court also refused to consider, is Ledwith's application, dated December 12, 1986, for a position at the Jack and Jill Nursery School in Colorado, where she worked from January to May 1987, in which she lists herself as single and her mother as the emergency contact

---

6. Margolin testified at the hearing that they receive mail "as husband and wife, as Brian Margolin and Rebecca Ledwith." Further, among the letters purportedly addressed to "Mr. and Mrs. Margolin" or "Rebecca Margolin" was correspondence from Ledwith's mother.

person.[7] In the accompanying affidavit, the "owner and operator" of the school asserts that, to the best of her knowledge, Ledwith and Margolin were only friends. Thus, the sole evidence regarding plaintiffs' intent and general repute in Colorado with respect to a common-law marriage, other than their self-serving testimony, indicates that they were actually unmarried.

A report, dated March 15, 1989, of the psychologist who examined Ledwith in connection with her disability benefits application states, based on a discussion with Ledwith, that she "lives * * * on a cooperative farm with five other persons who essentially are her support group. Apparently she has a small cottage in which *she lives alone*. The other persons have cottages on the land nearby". (Emphasis added.)

The only documentation of common-law marriage produced at the hearing was an application for car insurance, apparently dated February 1989, 14 months after the accident (though eight months before this action was commenced); however, that document was not included in the record on appeal. Also omitted, but mentioned in the hearing court's decision, is Margolin's application to the University of Oregon, which states: "My girlfriend was seriously burned in December 1987".

Even more remarkable, plaintiffs conceded that they had lied on prior occasions in order to advance their personal interests. For example, both Margolin and Ledwith admitted they falsely stated on their community college application that they had lived in Oregon for 11 months, despite their "certify-[ing] that the information on this page is correct", so they could receive the benefit of in-State tuition. They also made up the "house number" address of the converted school bus in which they were living on their Oregon Department of Motor Vehicles car registration applications. The court chose to ignore these statements, since plaintiffs claimed they otherwise would have been unable to attend school. In sum, plaintiffs' collective testimony on the issue of their common-law mar-

---

7. It is noted that Ledwith also stated on this employment application that she had an "Associate degree in Psychology". This is at odds with her deposition testimony in the unrelated Oregon action ("I did almost two years of community college") and her application for admission to Lane Community College (the spaces for college or university previously attended and degree previously earned were left blank). Moreover, while she represented on the application that she had "two little brothers", when asked at the hearing about her family, she stated only that she had a "single mom and * * * two older brothers."

28

riage, despite the hearing court's finding of credibility, is unworthy of belief. Indeed, the record supports the conclusion that many of the statements plaintiffs made, whether in testimony, affidavits or included in various documents, were deliberately fabricated to meet the exigencies of the moment. On this record, we find that plaintiffs failed to establish a common-law marriage.

Accordingly, the order of the Supreme Court, New York County (Kristin Booth Glen, J.), entered on or about August 6, 1995, which, as limited by the briefs, *inter alia*, denied defendant's cross motion to dismiss the complaint as time barred and granted plaintiffs' cross motion to dismiss certain affirmative defenses, should be modified, on the law, to deny as to plaintiff Ledwith the cross motion to dismiss the third, tenth and eleventh affirmative defenses, and thereupon to grant defendant's cross motion to dismiss the complaint on behalf of Ledwith and, except as thus modified, affirmed, without costs or disbursements.

MURPHY, P. J., MILONAS, RUBIN and ANDRIAS, JJ., concur.

Order, Supreme Court, New York County, entered on or about August 6, 1995, modified, on the law, to deny as to plaintiff Ledwith the cross motion to dismiss the third, tenth, and eleventh affirmative defenses, and thereupon to grant defendant's cross motion to dismiss the complaint on behalf of Ledwith and, except as thus modified, affirmed, without costs or disbursements.