**Mary Anne KILMER, Plaintiff,**

v.

**FLOCAR, INC. d/b/a Payless Car Rental and Philip Staples, Defendant.**

**No. 5:01–CV–506(HGM/GLS).**

United States District Court,
N.D. New York.

Dec. 18, 2002.

Smyk, Smyk Law Firm, Attorneys for Plaintiff, Binghamton, NY, Stephen D. Smyk, Molly Reynolds Fitzgerald, of Counsel.

Smith, Sovik Law Firm, Attorneys for Defendants, Syracuse, NY, Eric G. Johnson, of Counsel.

## MEMORANDUM—DECISION AND ORDER

MUNSON, Senior District Judge.

Currently before the court is defendants' motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons that follow below, defendants' motion is GRANTED.

## BACKGROUND

The relevant facts are undisputed. On April 29, 1997, plaintiff Mary Anne Kilmer, a resident of the State of New York, and defendant Philip Staples, a resident of the State of Maine, were involved in an automobile accident in Orlando, Florida. Plaintiff drove her own 1989 Mercury Cougar while defendant drove a 1996 Ford vehicle, which he rented from co-defendant Flocar, Inc., a Florida Corporation, doing business as Payless Car Rental. On March 30, 2001, plaintiff filed this personal injury negligence claim pursuant to the court's diversity jurisdiction. *See* 28 U.S.C. § 1332. Plaintiff seeks damages for alleged physical and psychological injuries. In a separate action, plaintiff also filed for Chapter 7 Bankruptcy on June 29, 2001.

On July 2, 2001, defendants answered plaintiff's complaint. Defendants raised numerous affirmative defenses, most notably, for purposes of the instant motion, that the applicable statute of limitations barred plaintiff's action. Over the next ten months, the parties conducted discovery in an effort to prepare for non-binding arbitration as part of the Northern District of New York's Alternative Dispute Resolution ("ADR") program. On May 22, 2002, with the court's permission, the parties opted-out of non-binding arbitration and instead chose to submit their case to

binding "high-low" arbitration. The parties subsequently pursued binding arbitration until defendants served plaintiff with the instant motion for summary judgment on July 19, 2002.[1]

Defendants move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and assert that New York C.P.L.R. § 214 has rendered plaintiff's claim untimely. In opposition to defendant's motion for summary judgment, plaintiff makes the following arguments: 1) defendants waived the right to bring a motion for summary judgment when the parties agreed to submit plaintiff's action to binding arbitration and 2) the instant action is stayed pending the resolution of plaintiff's Chapter 7 Bankruptcy filing.

## DISCUSSION

### I. Standard for Summary Judgment

The standard for summary judgment is well-settled. Rule 56 allows for summary judgment where the evidence demonstrates that "there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Summary judgment is properly regarded as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986) (quoting Federal Rule of Civil Procedure 1). A court may grant a motion for summary judgment when the moving party carries its burden of showing that no triable issues of fact exist. *See Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990). In light of this burden, any inferences to be drawn from the facts must be viewed in the light most favorable to the non-moving party. *See id.; United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam). If the

---

**1.** Defendants filed their motion for summary judgment and supporting documents with the court on September 9, 2002.

moving party meets its burden, the burden shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). To defeat a motion for summary judgment, however, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A dispute regarding a material fact is genuine "if evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. When reasonable minds could not differ as to the import of the evidence, then summary judgment is proper. *See Anderson*, 477 U.S. at 250–251, 106 S.Ct. at 2511.

## II. Plaintiff's Non–Compliance With Local Rule 7.1

On July 19, 2002, defendants, in support of their motion and pursuant to Rule 7.1 of the Rules of Local Practice for the United States District Court for the Northern District of New York ("Local Rule" or "L.R."), served plaintiff with a Notice of Motion for Summary Judgment, an Attorney Affidavit with exhibits, a Statement of Material Facts, and a Memorandum of Law. Plaintiff's response to defendants' motion did not comply with the Local Rules.

Under L.R. 7.1(b)(1)(B), the non-moving party must serve its opposition papers on the moving party-within twenty-one days from the date of service of the motion papers. Local Rule 7.1(a) requires the non-moving party to submit a Memorandum of Law in opposition to all motions. Local Rule 7.1(a)(3) requires the moving party to support its motion for summary judgment with a statement setting forth the material facts not-at-issue. Similarly, the non-moving party must file a response to the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. L.R. 7.1(a)(3). Each denial shall set forth a specific citation in the record where the factual issue arises. The non-moving party's failure to file such a response constitutes an admission of the movant's asserted non-disputed facts. *Id.* The court shall deem the non-moving party's failure to file or serve any papers as required by the Local Rules as consent to its granting the motion. L.R. 7.1(b)(3).

By August 9, 2002, plaintiff had not filed any opposition papers; plaintiff therefore failed to file within the twenty-one day period for filing opposition papers in violation of L.R. 7.1(b)(1)(B). Consistent with the Local Rules, it is within the court's discretion to deem such failure, in and of itself, as plaintiff's consent to granting defendants' motion. On September 9, 2002, plaintiff made an attempt to comply with the Local Rules and submitted an attorney's affidavit with attached exhibits. Plaintiff, however, failed to file either a response to defendant's Statement of Material Facts or a Memorandum of Law. To date, the attorney affidavit with attached exhibits constitutes plaintiff's only filed opposition to defendants' motion for summary judgment.

 The Local Rules are not empty formalities. Local Rules, such as 7.1(a), 7.1(a)(3), 7.1(b)(1)(B), and 7.1(b)(3), "serve to notify the parties of the factual support for their opponent's arguments, but more importantly inform the court of the evidence and arguments in an organized way-thus facilitating its judgment of the necessity for a trial." *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir.1995). Each of these functions is critical. A party's failure to comply with these rules is fundamentally unfair to the opposing party. The opposing party has a right to be informed of the factual bases of his rival's case and the specific foundations for those contentions of fact. Non-compliant conduct is also adverse to the conservation of judicial resources which are most efficiently used when the parties meet their adversarial duties in a tightly orchestrated and lucid manner. *See Meaney v. CHS Acquisition Corp.*, 103 F.Supp.2d 104, 107 (N.D.N.Y. 2000); *Niles v. New York Office of Mental Retardation and Development Disability*, 1996 WL 743839, at *6 (N.D.N.Y. Dec 20, 1996).

 Arguably, the court may grant defendants' motion for summary judgment sim-

ply because of plaintiff's failure to file its opposition in accordance with L.R. 7.1(b)(3). *See Allen v. Comprehensive Analytical Group, Inc.,* 140 F.Supp.2d 229, 231 (N.D.N.Y.2001). The Second Circuit, however, has explained that "[t]he fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz,* 76 F.3d 483, 486 (2d Cir.1996). Thus, notwithstanding plaintiff's failure to submit the required opposition papers, the court must review the merits of defendants' motion. This of course does not prevent the court from admitting defendants' uncontested assertions as contained in its Statement of Material Facts for purposes of deciding whether summary judgment should be granted.[2]

### III. Choice of Law

The parties disagree as to whether Florida or New York's applicable statute of limitations governs plaintiff's action.[3] Plaintiff contends Florida's four-year statute of limitation applies while defendants assert that New York's three-year statute of limitations applies. *See* FL ST § 95.11; N.Y. C.P.L.R. § 214 (McKinney 1990). The Second Circuit resolves this dispute in favor of the defendants.

In diversity actions, Federal Courts apply the substantive law of the state in which they sit. *See Quinn v. Teti,* 2000 WL 1616806 at *1–2 (2d Cir. Oct. 27, 2000) (citing *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). The Second Circuit instructs that where, as here, "jurisdiction rests upon diversity of citizenship, a federal court sitting in New York must apply the New York choice-of-law rules and statutes of limitations." *Stuart v. American Cyanamid Co.,* 158 F.3d 622, 626 (2d Cir. 1998) (citing *Guaranty Trust Co. v. York,* 326 U.S. 99, 108–09, 65 S.Ct. 1464, 89 L.Ed. 2079

(1945)). Statutes of Limitations are substantive laws which federal courts sitting in diversity jurisdiction must apply. *See Quinn v. Teti,* 2000 WL 1616806 at *1–2. "New York courts generally apply New York's statutes of limitations, even when the injury giving rise to the action occurred outside New York." *Stuart,* 158 F.3d at 627. Where, as here, a cause of action accrues out of state, the applicable statute of limitations is determined by application of N.Y. C.P.L.R. § 202. *See Ledwith v. Sears Roebuck & Co.,* 231 A.D.2d 17, 660 N.Y.S.2d 402, 405 (1997). Section 202 provides:

> An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.

As such, while non-New York State residents always face the shorter statute of limitations as between New York and the accrual state, New York State residents are always subject to the New York statute of limitations. *See McCarthy v. Bristol Labs.,* 449 N.Y.S.2d 280, 283, 86 A.D.2d 279, 283 (2nd Dept.1982) ("The timeliness of an action brought in New York by a resident of the State upon a cause of action which accrued elsewhere is governed by applicable New York Statute of Limitations and the New York 'borrowing statute' [N.Y. C.P.L.R. § 202] is inapplicable.") *cf. Silva v. Toll Brother's, Inc.,* No. 97 Civ. 741, 1998 WL 898307 at *2 (S.D.N.Y. 1998) (citing *McCarthy* ); (*Rossi v. Ed Peterson Cutting Equip. Corp.,* 131 Misc.2d 31, 498 N.Y.S.2d 283, 285 (Sup.Ct.1986)). Therefore, the court applies New York Law in determining the applicable statute of limitations.

---

2. The courts of the Northern District of New York have adhered to a strict application of Local Rule 7.1(a)(3)'s summary judgment requirements. *See Bundy American Corporation v. K–Z Rental Leasing, Inc.,* 2001 WL 237218 (N.D.N.Y. March 9, 2001); *I.B.E.W. Local No. 910 Welfare, Annuity and Pension Funds v. Dexelectrics, Inc.,* 98 F.Supp.2d 265, 270 (N.D.N.Y.2000).

3. Additionally, the court's choice of law analysis governs with respect to applicable arbitration law, specifically whether the parties entered into a valid and enforceable arbitration agreement.

## IV. Statute of Limitations

In New York, a tort claim accrues upon the occurrence of the last event necessary to give rise to a claim, generally at the time of injury. *See Global Fin. Corp. v. Triarc Corp.*, 93 N.Y.2d 525, 529, 693 N.Y.S.2d 479, 481, 715 N.E.2d 482 (1999). New York's C.P.L.R. § 214 provides in part: "The following must be commenced within three years: ... (5) an action to recover damages for a personal injury except as provided in sections 214–b, 214–c and 215." Plaintiff's personal injury claims do not fall within any of the statutory exceptions. As such, plaintiff must have filed any claims arising from the April 29, 1997, automobile accident by April 29, 2000, to avoid the statute of limitations' expiration. Plaintiff did not file her claim until March 30, 2001, eleven months after the statute of limitations expired; consequently, New York's Statute of Limitations, C.P.L.R. § 214(5), bars plaintiff's action as untimely. The court now addresses whether the parties' alleged foray into binding arbitration in any way rebuts the statute of limitations defense.

## V. Arbitration

Plaintiff contends that the parties' agreement to pursue binding arbitration acts 1) to remove plaintiff's case from the Federal Court System and, 2) nullifies defendant's right to bring its motion for summary judgment. Plaintiff fails to cite any case law or statute to support these propositions. The Second Circuit, however, does not treat agreements to arbitrate lightly and has cautioned against "the considerable temptation for the court to pass on the validity of [arbitration defenses] rather than to refer their resolution to an arbitrator." *Conticommodity Serv. v. Philipp & Lion,* 613 F.2d 1222, 1224 (2d Cir.1980); *see Martens v. Thomann,* 273 F.3d 159, 179 n. 14 (2d Cir.2001) ("Generally, however, if the claims are subject to a valid and enforceable arbitration agreement, the arbitrator, not the court should be deciding the statute of limitations issue."). The court now examines the parties' purported arbitration agreement.

### A. The Parties' "Agreement" to Arbitrate

The brief history of the parties' attempt at binding arbitration is as follows. On May 22, 2002, the parties participated in a telephone conference with United States Magistrate Judge Gary L. Sharpe in which they asked for the court's permission to submit their case to binding arbitration. Magistrate Sharpe granted the parties' request, which thereby removed them from the court's ADR program in which they had previously selected non-binding arbitration. In his affidavit, plaintiff's counsel asserts that, in the interim between the telephone conference and defendants' motion for summary judgment, the parties negotiated and reached agreement as to high and low figures, but he does not assert that the parties reached a comprehensive agreement to govern the arbitration process. Defendants' counsel concedes in his affidavit that the parties were in the process of negotiating high and low figures but emphasizes that the parties did not reach final agreement as to the figures. Neither party, however, has provided the court with a written arbitration agreement, and neither of the parties claim to have produced a written agreement fashioning the terms and conditions which were to govern their arbitration. The court now addresses whether the Federal Arbitration Act ("FAA") or New York law controls the parties' arbitration.

### B. Non–Applicability of the FAA

For cases that fall within its reach, the FAA governs every aspect of arbitration procedure and preempts inconsistent state law, even when subject matter jurisdiction is based on diversity of citizenship and when parties have selected a particular state's law by contract. *Aviall, Inc. v. Ryder System Inc.,* 913 F.Supp. 826, 830 (S.D.N.Y.1996). The FAA established a federal policy favoring arbitration whereby courts are to rigorously enforce arbitration agreements. *See Shearson/American Express Inc. v. McMahon,* 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987). The FAA, however, "does not require parties to arbitrate when they have not agreed to do so ... It simply requires courts to enforce privately negotiated agreements to arbitrate, like other con-

tracts, in accordance with their terms." *Volt Info. Sciences v. Board of Trustees of Leland Stanford Univ.*, 489 U.S. 468, 478, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989). Section two of the FAA, 9 U.S.C. § 2, provides in part: "[A]n agreement *in writing* to submit to arbitration an existing controversy ... shall be valid" (emphasis added). As such, it is clear that the FAA requires arbitration agreements to be in writing. *See In re Arbitration Between Chung and President Enters.*, 943 F.2d 225, 229 (2d Cir.1991) ("Generally, the FAA governs all questions before a federal court regarding the validity and enforceability of arbitration agreements if: (1) the parties have entered into a written arbitration agreement; (2) there exists an independent basis for federal jurisdiction; and (3) the underlying transaction involves interstate commerce."). Here, the parties failed to produce a written agreement to arbitrate, which thus renders the FAA inapplicable to this action. The court now similarly examines the parties' efforts to arbitrate under New York law.

### C. New York's Arbitration Statute

#### 1. Writing Requirement

■ New York's C.P.L.R. § 7501 provides in part: "A written agreement to submit ... any existing controversy to arbitration is enforceable to the justiciable character of the controversy and confers jurisdiction on the courts of the state to enforce it." New York courts, however, have consistently required a writing as a prerequisite for a binding arbitration agreement. *See Albrecht Chem. Co. v. Anderson Trading Corp.*, 298 N.Y. 437, 440, 84 N.E.2d 625 (1949) (holding telephone conversations between a buyer and a seller, which amounted to a contract, did not create an arbitration agreement); *Just In–Material Designs, Ltd. v. I.T.A.D. Assocs., Inc.*, 463 N.Y.S.2d 202, 94 A.D.2d 103 (1st Dept.1983) (explaining that absent a clear and unequivocal written agreement to arbitrate, the court will not compel arbitration); *Siegel v. 141 Bowery Corp.*, 380 N.Y.S.2d 232, 51 A.D.2d 209 (1st Dept.1976) (explaining that arbitration is a matter of contract, which must be in writing); *Application of Mandel*, 201 N.Y.S.2d 620, 11 A.D.2d

651 (1st Dept.1960) (explaining that an agreement to arbitrate, to be valid, must be supported by unequivocal consent in writing); *Nehemiah Gitelson & Sons v. Weavetex Mills*, 84 N.Y.S.2d 605, 274 A.D. 480 (1st Dept.1948) (noting that an oral agreement to arbitrate is unenforceable); *but cf. Todtman, Young, Tunick, Nachamie, Hendler, Spizz & Drogin, P.C. v. Richardson*, 672 N.Y.S.2d 87, 247 A.D.2d 318 (1st Dept.1998) (explaining that while the principle that an agreement to arbitrate must be in writing is well-settled, where arbitration was based upon a stipulation made in open court and duly recorded, absence of an agreement in writing does not prevent arbitration). Here, there is no question that the parties failed to produce a written arbitration agreement. Moreover, they did not stipulate in open court to arbitrate their dispute.

#### 2. New York's Statute of Limitations Bars Agreement to Arbitrate

■ Even if the court were to assume, arguendo, that the parties had reached a valid and enforceable arbitration agreement, under New York Arbitration Law, plaintiff's underlying action must still meet timeliness requirements. New York's C.P.L.R. § 7502(b) provides in part: "If, at the time that a demand for arbitration was made or a notice of intention to arbitrate was served, the claim sought to be arbitrated would have been barred by limitation of time had it been asserted in a court of the state, a party may assert the limitation as a bar to the arbitration." As previously noted, C.P.L.R. § 214 bars plaintiff's action as untimely. Consequently, even if the parties had entered into a valid and enforceable agreement, the statute of limitations on the underlying tort claim renders any such agreement without effect. The court now addresses whether plaintiff's Chapter 7 Bankruptcy proceedings in any way rebut the statute of limitations defense.

### VI. Chapter 7 Bankruptcy

■ Despite having filed for Chapter 7 Bankruptcy three months after commencing her action against defendants, plaintiff contends that her pending Bankruptcy filing automatically stays any current proceedings

before the court. Title 11 U.S.C. § 362 provides in part:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities of (1) the commencement or continuation including the issuance or employment of process, of a judicial, administrative, or other action or proceeding *against the debtor* that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; (3) any act to obtain possession of property of the estate or of property from the estate or to exercise *control over property of the estate* (emphasis added).

The question of stay applicability in this case is not of the common garden variety, for here, the lawsuit in question was started not by a creditor against a debtor, but by the debtor in a negligence action with federal diversity jurisdiction. Although the scope of the automatic stay is broad, the language of § 362(a) and the authority cited below confirms that the statute stays only proceedings against a "debtor"-the term used by the statute itself. "The statute does not address actions brought by the debtor which would inure to the benefit of the bankruptcy estate." *St. Croix Condominium Owners v. St. Croix Hotel Corp.,* 682 F.2d 446, 448 (3d Cir.1982). *In re Berry Estates,* 812 F.2d at 71 (citing *Teachers Ins. & Annuity Ass'n of America v. Butler,* 803 F.2d 61, 64–65 (2d Cir.1986)); *Commerzanstalt v. Telewide Systems, Inc.,* 790 F.2d 206, 207 (2d Cir.1986).

Here, the proceedings are not against the debtor; rather the debtor has brought a claim against a non-creditor in a tort action. Defendants' instant motion is not a counterclaim seeking property from or control over the plaintiff's estate; it is simply a motion for summary judgment without consequence or effect as to plaintiff's Chapter 7 Bankruptcy filing. Plaintiff's Chapter 7 Bankruptcy filing does not stay plaintiff's tort action.

## CONCLUSION

**WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED,** that defendants' motion for summary judgment is **GRANTED** and the complaint is hereby **DISMISSED** in its entirety. It is further

**ORDERED,** that the Clerk of the Court serve a copy of this Memorandum—Decision and Order upon the parties by regular mail.

**IT IS SO ORDERED.**